# MAGAW *v.* HUNTLEY.

---

EVIDENCE; EQUITY; AMENDMENT; DEEDS; UNDUE INFLUENCE; FRAUD; PRESUMPTIONS.

1. While the testimony of physicians as to the mental incompetency of the grantor in a deed attacked by an heir at law of the grantor as having been procured by the exercise of undue influence may be relevant as showing a condition of mind of the grantor rendering the grantor susceptible of being influenced, if there is any evidence tending to support the charge of undue influence, it is irrevelant and immaterial in the absence of any such evidence.

2. After the submission to the court below of the evidence in a suit in equity to set aside a deed as having been procured by the exercise of undue influence upon the grantor, it is proper for the court to refuse to allow the complainant to amend the bill of complaint so as to charge mental incapacity and so make it conform to the evidence, as such an amendment would make a new case.

3. It is not sufficient to support a charge that the execution of an instrument was procured by fraud, that the circumstances surrounding

its execution were suspicious. The whole case must be strong enough to establish fraud. (Following *McDaniel* v. *Parish*, 4 App. D. C. 213.)

4. In a suit by a grandson and one of the heirs at law of a deceased grantor to set aside a deed in trust of real estate, made by a woman eighty-three years of age, to the defendants, to be sold and the proceeds paid to a missionary society, to be used by it in the erection of a memorial building to the grantor and her deceased husband, as having been procured by undue influence, the fact that the defendants, the grantees in and trustees under the deed were members of the same missionary society, does not show that such a confidential or fiduciary relation existed between them and the grantor as will raise the presumption that they exercised undue influence upon her; nor can such disposition of the property be properly said to have been an unnatural one, where it appears, among other things, that the property had been purchased with a portion of money received from the estate of the grantor's deceased husband, who was, as she was, an active worker in missionary matters, and that since his death she had been living in this city, while her son and grandsons had been living in New York, and were in comfortable circumstances.

No. 2109.    Submitted October 11, 1910.    Decided December 5, 1910.

Hearing on an appeal by the complainant from a decree of the Supreme Court of the District of Columbia, sitting as a court of equity, dismissing a bill to set aside the deed of a deceased grantor as having been procured by the exercise of undue influence upon her.                    *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a decree of the supreme court of the District of Columbia dismissing a bill in equity filed by the appellant, Robert Magaw, hereafter referred to as complainant, against the appellees, Amelia E. Huntley, Lydia H. Tilton and Hettie H. Fague, Individually and as Trustees of the Woman's Foreign Missionary Society of the Metropolitan Memorial Methodist Episcopal Church, and Sarah D. LaFetra, Individually and as President of the Woman's Foreign Missionary Society of the Metropolitan Memorial Methodist Episcopal

Church, defendants below praying a cancelation of a deed for certain property located in the city of Washington.

The deed in question, executed May 28, 1907, after describing the property and reserving a life estate therein, conveys the property to the defendants in trust to be sold at the death of the grantor, and "the proceeds derived from such sale or sales, after paying and deducting necessary expenses attending upon such sale or sales, shall be paid unto the Woman's Foreign Missionary Society of the Metropolitan Memorial Methodist Episcopal Church of the City of Washington, District of Columbia, and the receipt of the treasurer of said society shall be a sufficient discharge to said trustees for the payment of said money. The money so paid to said society shall be applied by them, in their discretion, in the erection of a building as a memorial to the grantor's departed husband, Robert Magaw, and to grantor, Alice D. Magaw, to be used either for the purposes of a church hospital, orphanage, mission home, school, or some other missionary purpose, in the discretion of said society, said building shall be erected either in China or in India, and the character of said memorial, and the particular place at which it shall be located, shall be determined by the said society in its discretion. Such determination shall be conclusive and binding upon all parties." The deed contained the usual habendum and warranty clauses, and was in all respects executed as required by law.

The complainant sues in his own right as a grandson of Alice D. Magaw. The defendants Huntley, Tilton, and Fague are sued as individuals in their own right and as trustees of the said Woman's Foreign Missionary Society, "an unincorporated society organized for the purpose of promoting the cause of foreign missions." The defendants La Fetra and Tilton are sued as individuals and as president and secretary, respectively, of the same society. The defendants Van Brunt Magaw, Frederick L. Magaw, and Stephen Magaw, are sued as individuals in their own right. The complainant alleges that Alice D. Magaw died in the city of Washington on the 10th day of August, 1907, at the age of eighty-three years, "leaving the follow-

ing heirs at law, all of whom, with the exception of the complainant, are defendants herein, to wit: Van Brunt Magaw, a son, Frederick L. Magaw, a son, and Stephen Magaw, a grandson, all residents of the State of New York." The bill charges the defendants Huntley, Tilton, Fague, and La Fetra with procuring Alice D. Magaw to execute and deliver to them as trustees the deed of conveyance in controversy, which the said defendants caused to be recorded in the office of the recorder of deeds of the District of Columbia. It is further alleged:

"Fifth. The complainant further showeth that the said Alice D. Magaw and the defendants Amelia E. Huntley, Lydia H. Tilton, Hettie H. Fague, and Sarah D. La Fetra, were members of the Metropolitan Memorial Methodist Episcopal Church of Washington, District of Columbia, and also of the Woman's Foreign Missionary Society, and that, because of said affiliations and associations, relations of intimacy and confidence subsisted between the decedent and the said defendants named in this paragraph, both at the time of the execution of said deed and for some time prior thereto.

"Sixth: The complainant avers that at the time said deed was executed, and for a long time prior and subsequent thereto, the said Alice D. Magaw, who was eighty-three years of age, was in an enfeebled condition of mind and body, and was thereby rendered readily susceptible to influences exerted or attempted to be exerted by others.

"Seventh: The complainant further avers that the aforesaid defendants, Amelia E. Huntley, Lydia H. Tilton, Hettie H. Fague, and Sarah D. La Fetra, and others, well knowing the aforesaid condition of the same decedent, and with the intention of cheating and defrauding the heirs at law of said decedent out of their share of the aforesaid property, and taking advantage of their close and intimate relations with the decedent, procured her to execute and deliver said deed without the knowledge of said heirs at law, and thereafter placed the same on record."

The bill further alleges that the defendant trustees are in possession of the property, and that the complainant, together

with the defendants Van Brunt Magaw, Frederick L. Magaw, and Stephen Magaw, "are the tenants in common of said property, and have been since the death of Alice D. Magaw, aforesaid. Van Brunt Magaw, Frederick L. Magaw, and Stephen Magaw are made defendants to this action for the reason that they refuse to join as complainants." Complainant then prays that the deed be declared null and void, and be vacated and set aside.

The defendants Fague and La Fetra answered separately, and the defendants Huntley and Tilton answered jointly. They all deny that the deed was procured by undue influence or fraud of any kind. The defendants Fague and Huntley aver that they did not know of the execution of the deed until they saw an account in the daily papers of its having been recorded. The defendants deny that the grantor was in a condition rendering her susceptible to being influenced by others, but, on the contrary, aver that she was a woman of strong will and purpose. The defendant Tilton avers that during one of her visits to the decedent prior to the execution of the deed in question, decedent told defendant of her intention to execute a deed to effect the same purpose which she had sought to accomplish by a codicil to her will formally executed, namely, to convey this property to trustees for the purpose stated in the deed. The defendant La Fetra in her answer avers that the deed was executed by the decedent as her free and voluntary act, and was made of her own motion and without suggestion from the defendant. The defendants all deny that decedent was a member of the Metropolitan Memorial Methodist Episcopal Church, but admit that she was a member of the Woman's Foreign Missionary Society of said church, of which the defendants are also members. They further deny that because of such membership any such relations of confidence and intimacy existed between them and the decedent as would influence her to execute the deed, and that the statements to that effect as set forth in the bill are wholly untrue. The complainant joined issue on the defendants' answers, and a voluminous amount of evidence was taken. On hearing, a decree was entered dismissing the bill, with costs,

from which decree the complainant has brought the case here on appeal.

*Mr. E. Hilton Jackson* and *Mr. Francis Stockton McDivitt* for the appellant.

*Mr. B. F. Leighton* for the appellees.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

The evidence adduced at the trial in effect shows that Alice D. Magaw had been living in Washington for several years; that her husband died at their residence in New York in 1887; and that the property in question was purchased by the decedent with a portion of the money received from her husband's estate. It further appears that while she and the defendants were members of the missionary society, none of the defendants gave her at any time any advice, nor is it shown that any influence was exercised by them upon her to induce her to execute the deed in question. It appears that, some time prior to the execution of the deed the decedent executed and attached a codicil to her will, in which she provided for the sale of the property in question, and that the money should be disposed of in substantially the same manner as provided in the deed. Subsequently, a clerk in the register of wills office of the District of Columbia, who was rooming and boarding at the hotel where the decedent lived, suggested in the course of conversation that a better and less expensive way than by will of disposing of her property in the manner she contemplated was by deed to trustees, reserving a life estate therein. This seems to have given the decedent the idea of excuting a deed. She sent for her attorney, and, according to his testimony, the matter was fully discussed, and she directed him to prepare the deed in question. The deed was prepared, and the uncontradicted testimony is that it was read over to her and explained before it was signed and witnessed. The only one of the defendants, aside from the Magaws, who could be regarded as occupying a

confidential relation with the deceased, is the defendant Fague, who for years was her nurse and attendant. She testifies that while she knew of the execution of the codicil to the will, she did not know of the execution of the deed until she saw in the paper that it had been recorded. She also testified that she never in any way counseled with the decedent as to the advisability of her making this disposition of her property. Her testimony on this point stands uncontradicted. In fact, she is corroborated to some extent at least by the testimony of the witnesses who were present at the execution of the deed, not only to the effect that she was not present, but that the decedent was purposely concealing the transaction from her.

A number of physicians testified as to the mental condition of the deceased. Complainant called three who testified on his behalf. One of them testified that he called to see decedent at the request of her son in May, 1906, while on a visit to this city from New York, and made a brief examination of her condition. He stated that he did not think she was mentally capable of transacting business. Another testified that he saw decedent in December, 1905, but did not visit her in the capacity of a physician, and did not examine her as he would have done if he had regularly called to see her. It was his opinion that she was incapable of understanding the nature of a business transaction such as the one under consideration. The remaining physician who testified for the complainant had never seen decedent, and was required to answer a prepared hypothetical question, which was supposed to be based upon the evidence in the case. He testified that, assuming the facts stated in the question to be true, the decedent, at the time of the execution of the deed, was incompetent to understand and appreciate the nature of her act, and was mentally incompetent to conduct business transactions. The physician who for years attended the deceased was placed upon the stand by the defendants, and testified that, while the deceased during the last two or three years of her life was troubled with aphasia, which so affected her memory that she could not express herself coherently at times, yet she was in the full possession of her other faculties;

was a woman of strong will; was perfectly competent to conduct business transactions; and was able to understand fully the nature of the transaction here in question, at the time of the execution of the deed.

The evidence of the physicians need not be analyzed nor considered in detail, since it can only be material in this case upon one theory. The bill charges that the deed was procured by undue influence being exercised over the grantor. Nowhere is it charged in the bill that the grantor was mentally incompetent at the time of the execution of the deed. The testimony of the physicians, therefore, could only be relevant as showing a condition of the mind that would render the grantor susceptible of being easily influenced by those occupying close relations with her at the time of the execution of the deed, but as there is absolutely no proof of any of these defendants having exercised any undue influence over the grantor, or having attempted to exercise such influence, the evidence of the physicians is totally outside of the issue. After the evidence was submitted to the court, counsel for complainant asked leave to amend the bill with a view of alleging the mental incompetency of the grantor at the time of the execution of the deed, and for the purpose, as stated, of making the bill conform to the evidence. This request was properly refused by the court. Such an amendment would have materially changed the entire cause of action, and would have presented allegations in the bill of which the defendants were not apprised, and which they were not required by the original bill to answer or defend. It may be suggested that on this record the result would not have been different had the amendment been made.

There is considerable evidence in the record that tends to discredit the charge of decedent's inability to intelligently conduct business transactions. In fact, there is much to show that up almost to the time of her death she conducted important business transactions. A month following the execution of the codicil she executed and acknowledged a release of a mortgage in New York, in which she, with complainant and his brother, were mortgagees. She signed checks for the payment of cur-

rent bills, and continued to conduct her own affairs until the time of her death. It appears also that her son sent her from New York $1,200 during the month in which this deed was executed, and advised her to loan it on property; that she took $300 she had on deposit in bank, and made a loan of $1,500 on real estate in this city.

It is argued by counsel for complainant that, because of the fact that the defendants, except the Magaws, and the decedent were members of the same missionary society, such a confidential relation existed as would require the court to presume that undue influence was used upon the decedent to procure from her this alleged unnatural disposition of her property. The relation existing between these parties was not necessarily either a confidential or a fiduciary one. Neither are we convinced that the disposition of the property in question by the decedent is unnatural. The property was purchased by the decedent with a portion of the money received from her husband's estate. She stated as a reason for giving it to the missionary cause that her heirs at law had all been well provided for. She had been living in the city of Washington almost continuously from the date of the death of her husband, separate and apart from her relatives, who resided in New York, and who, as the record shows, are in comfortable circumstances. The record further shows that the decedent and her husband had been members of the Flatlands Dutch Reformed Church, of Flatlands, New York, and had been active workers therein for many years prior to her husband's death; that the deceased remained a member of that church until the time of her death; and that she and her husband during their lifetime had been deeply interested in church and missionary work, the deceased for many years taking a deep interest in church matters. With this state of facts, we are not prepared to say that the disposition of the property in question was an unnatural one, or that the circumstances were such as to warrant the presumption that it was secured by undue influence. It is not sufficient to establish fraud, that the circumstances surrounding the execution of the instrument assailed may appear suspicious. The whole case must be strong

enough to establish fraud. As this court said in *McDaniel* v. *Parish,* 4 App. D. C. 213: "Suspicious circumstances are not the equivalents of proof; and unless all the facts and circumstances of the case, when taken together, are strong enough to generate a clear rational conviction of the existence of the fraud charged, that conclusion ought not to be adopted which will destroy a prima facie good title to property, and blacken the characters of the parties concerned." If decedent was induced by feelings of friendship and gratitude to execute the deed, it will not be set aside on the ground of undue influence, if it appears that she acted upon her own independent, deliberate judgment. *Ralston* v. *Turpin,* 129 U. S. 663, 32 L. ed. 747, 9 Sup. Ct. Rep. 420. Neither will it be set aside upon evidence merely tending to show undue influence. *Beyer* v. *LeFevre,* 186 U. S. 114, 46 L. ed. 1080, 22 Sup. Ct. Rep. 765.

The defendants, who were charged with fraudulently inducing the decedent to execute the deed in question, were not beneficiaries under it, and occupied no fiduciary relation whatever toward her. This is not, therefore, a case where the burden is cast upon the defendant to explain a transaction where an apparent undue advantage has been gained, and where the relations of the parties were such as to warrant a presumption under the particular circumstances of an undue advantage having been taken. It is unnecessary to enter into any discussion of the law applicable to cases of this sort, since the charges of fraud and undue influence have totally failed for lack of any evidence whatever. The numerous authorities cited by counsel for complainant all presuppose the existence of a fiduciary relation, which we have found did not exist in this case. In the absence of such relation, a very different rule of law governs. Here the burden of showing undue influence, which must necessarily partake of fraud, was upon the complainant. This burden he failed to discharge, and the relations of the parties were not such as to warrant its presumption.

The decree is affirmed, with costs, and it is so ordered.

*Affirmed.*