Ruby McDonough, petitioner.

Suffolk. May 6, 2010. - August 11, 2010.

Present: Marshall, C.J., Ireland, Spina, Cowin, Cordy, Botsford, & Gants, JJ.

*Supreme Judicial Court,* Superintendence of inferior courts. *Witness,* Competency. *Practice, Criminal,* Standing, Interlocutory appeal. *Americans with Disabilities Act. Handicapped Persons. Anti-Discrimination Law,* Handicap. *Constitutional Law,* Witness, Standing.

This court, exercising its extraordinary power of review pursuant to G. L. c. 211, § 3, concluded that the alleged victim of a crime lacked standing to seek interlocutory review of a judge's order finding her not competent to testify in a criminal case because of her impaired capacity to communicate orally. [517-520]

This court established the appellate procedure to be followed in a criminal case in which a witness (or the party proffering a witness's testimony) requests accommodation for a disability in order to testify at trial, and a judge denies the requested accommodation, thereby preventing the witness from testifying. [520-522]

This court established guidelines to be used in a trial court where a witness seeks accommodation for a disability in order to testify in a criminal case and the issue cannot be resolved without judicial intervention. [522-526]

Consideration of a criminal defendant's constitutional right to cross-examination with respect to the reasonableness of a witness's requested accommodation for a disability in order to testify in the case. [526-527]

Petition filed in the Supreme Judicial Court for the county of Suffolk on October 20, 2009.

The case was reported by *Spina,* J.

*Wendy J. Murphy* for the petitioner.

*Casey E. Silvia,* Assistant District Attorney (*Marian T. Ryan,* Assistant District Attorney, with her) for the Commonwealth.

*Richard B. Klibaner* for Kofi Agana.

*Martha Coakley,* Attorney General, & *Adam Hollingsworth,* Assistant Attorney General, for the Attorney General, amicus curiae, submitted a brief.

*Susan Stefan & Robert D. Fleischner,* for National Aphasia Association & others, amici curiae, submitted a brief.

MARSHALL, C.J. A prospective witness for the Commonwealth in a criminal trial, the alleged victim Ruby McDonough, seeks interlocutory appellate review of an order of a District Court judge finding her not "competent" to testify because of her impaired capacity to communicate orally. McDonough's disability is the result of a stroke, which causes her to suffer from "expressive aphasia."[1] Before trial, on motion of the defendant, McDonough's "competency" was evaluated by a court-appointed expert. Focusing "primarily" on McDonough's "intact mental capacity," the expert opined that McDonough *was* competent to testify, noting that certain methods of questioning McDonough facilitated her communications. The judge's contrary finding rested in substantial part on his own observation that although McDonough can respond to "yes" or "no" questions, she is, in the judge's words, "incapable of providing any narrative." He concluded that permitting her to testify would infringe the defendant's right to cross-examination.

The Commonwealth did not seek appellate review of the judge's order.[2] Represented by new counsel, McDonough then filed a petition in the county court pursuant to G. L. c. 211, § 3,[3] claiming that conducting the hearing on her "competency" to testify without accommodating her stroke-induced disability and the judge's ruling that she could not testify at trial violated her rights under Title II of the Americans with Disabilities Act

---

[1] A court-appointed expert described McDonough as suffering from "left-hemiparesis, and expressive aphasia secondary to a stroke seven years previously." "Aphasia" is defined as "[i]mpaired or absent comprehension or production of, or communication by, speech, reading, writing, or signs, caused by an acquired lesion of the dominant cerebral hemisphere." Stedman's Medical Dictionary 117 (28th ed. 2006). See American Heritage Dictionary of the English Language 83 (4th ed. 2006) ("Partial or total loss of the ability to articulate ideas or comprehend spoken or written language, resulting from damage to the brain caused by injury or disease").

[2] The Commonwealth filed in the trial court a notice indicating its intent to seek relief pursuant to G. L. c. 211, § 3. For reasons not apparent in the record, the Commonwealth did not pursue that avenue.

[3] General Laws c. 211, § 3, provides, in pertinent part: "The supreme judicial court shall have general superintendence of all courts of inferior jurisdiction to correct and prevent errors and abuses therein if no other remedy is expressly provided; and it may issue all writs and processes to such courts and to corporations and individuals which may be necessary to the furtherance of justice and to the regular execution of the laws."

(ADA), 42 U.S.C. §§ 12131 et seq. (2006)[4]; the Massachusetts Equal Rights Act (MERA), G. L. c. 93, § 103[5]; and art. 114 of the Amendments to the Massachusetts Constitution.[6] A single justice reserved and reported the case to the full court, staying the underlying criminal trial pending further order.

Because of the "pervasive unequal treatment" of individuals with disabilities, *Tennessee* v. *Lane*, 541 U.S. 509, 524 (2004), the Massachusetts Constitution, Massachusetts statutes, and Federal statutes now impose on State courts certain affirmative obligations to accommodate an individual with disabilities in order to provide her with access to the courts, including providing her with the "same rights as other persons" to "give evidence." G. L. c. 93, § 103 (*a*). Nevertheless, for the reasons we explain below, we conclude that McDonough has no standing to seek appellate review of the decision of the judge in the District Court that precluded her from testifying in the defendant's criminal trial. Accordingly, we deny her petition.[7]

---

[4]Title II of the Americans with Disabilities Act (ADA) provides, in pertinent part: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (2006).

[5]The Massachusetts Equal Rights Act (MERA) provides, in pertinent part: "Any person within the commonwealth, regardless of handicap or age as defined in [G. L. c. 151B], shall, with reasonable accommodation, have the same rights as other persons to . . . *give evidence*, and to the full and equal benefit of all laws and proceedings for the security of persons and property, including, but not limited to, the rights secured under art. 114 of the Amendments to the Constitution" (emphasis added). G. L. c. 93, § 103 (*a*).

General Laws c. 151B, § 1 (17), defines "handicap" to mean "(*a*) a physical or mental impairment which substantially limits one or more major life activities of a person; (*b*) a record of having such impairment; or (*c*) being regarded as having such impairment, but such term shall not include current, illegal use of a controlled substance as defined in section one of chapter ninety-four C."

[6]Article 114 of the Amendments to the Massachusetts Constitution provides: "No otherwise qualified handicapped individual shall, solely by reason of his handicap, be excluded from the participation in, denied the benefits of, or be subject to discrimination under any program or activity within the commonwealth."

We use the terms disability and person with a disability synonymously with "handicap" and "handicapped individual," as those terms are used in G. L. c. 93, § 103, and art. 114. See note 5, *supra*.

[7]The Commonwealth represented at oral argument that it intends to seek a

However, because there is "considerable doubt" as to the proper appellate procedure in these circumstances, we exercise our general superintendence power pursuant to G. L. c. 211, § 3, "to resolve the doubt" and set forth the appellate procedure to be used in future cases. *Commonwealth* v. *Silva*, 448 Mass. 701, 705 n.5 (2007), quoting *Ottaway Newspapers, Inc.* v. *Appeals Court*, 372 Mass. 539, 551 (1977). Last, while we recognize that in many circumstances witnesses (and other court users) with disabilities routinely are provided with accommodations, all without controversy, see, e.g., G. L. c. 221, § 92A (court must appoint "qualified interpreter" in "any proceeding" in which "deaf or hearing-impaired person is a party or a witness"), because of the absence of adequate existing guidance in this important area, we also exercise our superintendence power to offer guidance for trial judges for those few cases where a witness with a disability seeks accommodation in order to testify and the proper resolution of the request is disputed.[8]

1. *Background.* We summarize the relevant undisputed facts from the record.[9] The defendant was charged in a complaint issued by the Framingham Division of the District Court Department with two counts of indecent assault and battery and one count of assault and battery on a person sixty years of age or older or a person with a disability, G. L. c. 265, §§ 13H and 13K ($a^{1}/_{2}$). The charges stem from an incident that allegedly occurred on January 28, 2009.[10] Before trial the defendant moved

rehearing in the District Court as to McDonough's capacity to testify. Our decision here does not foreclose that possibility. Should such a rehearing take place, the judge should consider whether McDonough can be provided with reasonable accommodation for her disability at the hearing, as well as whether McDonough can testify with reasonable accommodation at trial. See note 27, *infra.*

[8] We acknowledge the amicus briefs filed by the Attorney General, and by the National Aphasia Association, National Disability Rights Network, Judge David L. Bazelon Center for Mental Health Law, Hearing Loss Association of America, Center for Public Representation, Mental Health Legal Advisors Committee, and the Disability Law Center, both in support of the petitioner.

[9] The record contains a copy of the court-appointed expert's written report but no transcript of the hearing. McDonough claims that there was insufficient time to order a transcript of the hearing but acknowledges that a copy of an audiotape of the hearing is available. She did not include a copy of the audiotape recording in the record. McDonough makes various claims concerning what took place at the hearing, which are disputed by the defendant. We cannot and do not resolve those disputes.

[10] The Commonwealth alleges that the defendant, a certified nurse's aide,

for an evaluation of McDonough's competency to testify. Acting pursuant to G. L. c. 123, § 19,[11] the judge appointed a psychologist, Dr. Rosemary Klein, to examine McDonough; Dr. Klein subsequently filed a written report, which necessarily focused primarily on McDonough's "intact mental capacity." After interviewing McDonough and reviewing her medical records, as well as the complaint in this case, Dr. Klein opined in her written report that McDonough was mentally competent to testify.[12] Her opinion is consistent with the opinion of McDonough's primary care physician that McDonough "is not mentally incompetent."[13]

At a hearing in July, 2009, both McDonough and Dr. Klein testified. Although the judge expressed some skepticism concerning McDonough's memory, in his findings he focused primarily on McDonough's ability to communicate. The judge found that McDonough "*does* understand the difference between truth and falsehood, and her obligation to tell the truth" (emphasis added), but that she is "easily" confused "by the phrasing of a question." The judge made no reference to Dr. Klein's testimony or to her written report.[14] He did not address Dr. Klein's conclusion as to McDonough's difficulty with communication (as opposed to her mental competency) or Dr. Klein's suggestions that McDonough could benefit from specific methods of questioning, the timing of the questions, and the use of gestures or other physical expressions. See, e.g., note 12, *supra*. Rather, he said that it "became apparent" to *him* that McDonough "could not recount

---

entered McDonough's bedroom at the Sudbury Pines Nursing Home and touched her breasts and vagina.

[11]General Laws c. 123, § 19, provides: "In order to determine the *mental* condition of any party or witness before any court of the commonwealth, the presiding judge may, in his discretion, request the department [of mental health] to assign a qualified physician or psychologist, who, if assigned shall make such examinations as the judge may deem necessary" (emphasis added).

[12]Dr. Klein stated that she "did not perceive there to be any significant problem with understanding" McDonough's "meaning, so long as I could ask yes and no questions, allow her to occasionally point to a picture or to her own body, or to gesture with her hands or to make a frown or a smile with her face."

[13]The opinion of McDonough's primary care physician is included in Dr. Klein's report.

[14]Dr. Klein's written report was filed with the court on September 10, 2009, after she had testified at the hearing, but before the judge issued his findings and order on September 11, 2009. None of the parties suggests that Dr. Klein's testimony at the hearing differed in any material respect from the contents of her written report.

any of the details" of the defendant's alleged touching other than by answering "mainly leading questions 'Yes' or 'No.' " The judge found that McDonough was not "competent" to testify, concluding that were McDonough permitted to testify, the defendant's "rights to a meaningful cross examination would be adversely affected and he could not get a fair trial."

McDonough claims that she was required to testify at the hearing "without interpretive assistance," and that her family members asked to be able to "provide communicative assistance" to her during the hearing but "were not allowed to participate." The defendant points out that there is no record concerning whether, and if so how, such an offer of "assistance" was made. See note 9, *supra.* It is, however, undisputed that neither McDonough, her attorney, nor the Commonwealth specifically framed any offer to help interpret McDonough's communications as a request for reasonable accommodation under MERA, art. 114, or the ADA, and that the judge was not asked to, and did not, appoint any expert in communication disorders to evaluate McDonough.

The defendant opposed McDonough's G. L. c. 211, § 3, petition, arguing before the single justice that McDonough did not have standing to challenge the judge's order. The Commonwealth sent a letter to the clerk in the county court to the effect that it did not intend to seek relief pursuant to G. L. c. 211, § 3, and stating that it took "no position" on McDonough's petition. After what it terms "further consideration," the Commonwealth has filed a brief in this appeal and now generally supports McDonough's arguments.[15]

2. *Discussion.* a. *Standing.* Our discretionary power of review pursuant to G. L. c. 211, § 3, is "extraordinary" and will be exercised "only in 'the most exceptional circumstances.' " *Hagen* v. *Commonwealth,* 437 Mass. 374, 377 (2002), quoting *Costarelli* v. *Commonwealth,* 374 Mass. 677, 679 (1978). See *Planned Parenthood League of Mass., Inc.* v. *Operation Rescue,* 406 Mass. 701, 706 (1990). Parties seeking relief pursuant to G. L. c. 211, § 3, must demonstrate both a "violation of their substantive rights" and the absence of another "adequate or

---

[15]The Commonwealth filed a motion with this court to stay the appeal in order to seek a rehearing before the judge. McDonough and the defendant both opposed the motion, and it was denied.

effective avenue of relief." *Hagen* v. *Commonwealth, supra*, quoting *Victory Distribs., Inc.* v. *Ayer Div. of the Dist. Court Dep't*, 435 Mass. 136, 137 (2001).

McDonough acknowledges that as an alleged victim of a crime, she has no legally cognizable interest in the prosecution of the defendant that would permit her to seek review of the judge's order. See *Manning* v. *Municipal Court of the Roxbury Dist.*, 372 Mass. 315, 317 (1977) (victim of alleged crime has "no right" to challenge judicial determination "which forecloses further prosecution of that alleged crime"). See also *Hagen* v. *Commonwealth, supra* at 381-382 (victim lacks standing to file motion to revoke postconviction stay of criminal sentence); *Tarabolski* v. *Williams*, 419 Mass. 1001, 1002 (1994), quoting *Linda R.S.* v. *Richard D.*, 410 U.S. 614, 619 (1973) (private person "lacks a judicially cognizable interest in the prosecution or nonprosecution of another"). Rather, McDonough claims, she seeks to vindicate a violation of her own substantive right to "give evidence" "with reasonable accommodation" to the same extent as other persons, G. L. c. 93, § 103 (*a*), and her right not to be "excluded" from "participation in" the programs or activities of the court by "reason of" her disability, under both art. 114 and Title II of the ADA, 42 U.S.C. § 12132 (2006). See notes 4-6, *supra*. Whatever the scope of the obligation on a State court under the ADA to provide reasonable accommodation to a witness who is disabled in order to permit her to "participat[e] in" judicial proceedings,[16] or the right of a witness

---

[16]The defendant argues, citing *Boerne* v. *Flores*, 521 U.S. 507, 516 (1997), that Congress has no authority to impose on a State a requirement that State courts provide reasonable accommodations for witnesses with disabilities. The United States Supreme Court has concluded that Title II of the ADA applies "to the class of cases implicating the fundamental right of access to the courts," and as such "constitutes a valid exercise of Congress' § 5 authority to enforce the guarantees of the Fourteenth Amendment" on the States. *Tennessee* v. *Lane*, 541 U.S. 509, 533-534 (2004) (ADA validly applies to States to extent that State court facilities are so constructed as to bar physical access to courts by individuals with disabilities). In her amicus brief, the Attorney General, in contrast, argues that for purposes of the ADA, meaningful access to the courts is not limited to physical access to court houses. We need not resolve the issue because the cognate Massachusetts statute, MERA, imposes on the Commonwealth's courts certain obligations more tailored to McDonough's circumstances. See G. L. c. 93, § 103 (*a*) (any person with disability "shall, with reasonable accommodation, have the same rights as other persons to . . . give evidence").

who has a disability to "give evidence" under MERA or to "participat[e] in" judicial proceedings under art. 114, and whether any of McDonough's rights may have been violated, McDonough may not herself seek interlocutory appellate review of the judge's order because any "right" of hers to testify in the criminal case is contingent on the exercise by the Commonwealth of its discretion to call her as a witness. See *Delaney* v. *District of Columbia*, 659 F. Supp. 2d 185, 195 (D.D.C. 2009) (potential witness has no right to testify at criminal trial where neither prosecutor nor defense counsel exercises discretion to call witness). Cf. *Ambles* v. *State*, 259 Ga. 406, 409 (1989) ("Any right of a victim to testify in a criminal trial is necessarily subject to the prosecutor's discretion to call the victim to the stand").

In this case the Commonwealth chose *not* to pursue appellate review of the judge's ruling. See note 2, *supra*. Where a judge's order precludes a witness from testifying because her disability is not accommodated and the party seeking to introduce the testimony of that witness (here the Commonwealth) declines to pursue review of the ruling, the party has in effect exercised its discretion to forgo use of the witness's testimony at trial. A witness has no right to force a party to try its case in any particular manner. Cf. *Manning* v. *Municipal Court of the Roxbury Dist.*, *supra*. Just as a prospective witness has no right to insist on being called to testify, she has no right to force a party to seek appellate review of a judge's ruling that disqualifies her from testifying.[17],[18]

McDonough's substantive rights under MERA, art. 114, and

---

[17]Cases addressing accommodations for *parties* with disabilities, cited by the amici, are inapposite. See, e.g., *Popovich* v. *Cuyahoga County Court of Common Pleas*, 276 F.3d 808, 811 (6th Cir.), cert. denied, 537 U.S. 812 (2002) (ADA suit by father alleging failure to provide adequate assistance in child custody case); *Chisolm* v. *McManimon*, 275 F.3d 315, 320-321 (3d Cir. 2001) (ADA suit by inmate alleging, among other things, discrimination by failure to provide accommodation at extradition hearing). Cf. *Ward* v. *Sternes*, 334 F.3d 696, 698, 705-707 (7th Cir. 2003) (affirming grant of habeas petition where State court in extracting purported waiver of right to testify from defendant with aphasia did not exercise "level of extraordinary patience" necessary to overcome defendant's "severe language-processing deficit," as cautioned by fitness report).

[18]The decision in *Palaza* v. *Superior Court*, 393 Mass. 1001 (1984), relied on by McDonough, is not to the contrary. In that case, a prospective witness sought relief pursuant to G. L. c. 211, § 3, from a Superior Court judge's

the ADA are significant. However, her recourse for any injury she may have suffered is to initiate a separate action in a court of competent jurisdiction. See G. L. c. 93, § 103 (*b*) ("Any person whose rights under the provisions of subsection [*a*] have been violated may commence a civil action for injunctive and other appropriate equitable relief . . . in the superior court . . ."); 42 U.S.C. § 12133 (2006) (setting forth "remedies, procedures, and rights" available "to any person alleging discrimination on the basis of disability in violation" of Title II of ADA). Cf. *Tennessee* v. *Lane*, 541 U.S. 509, 533-534 (2004) (individual may sue State under ADA claiming infringement of "fundamental right of access to the courts").

We do not fault McDonough for pursuing relief in the manner she did, nor do we fault the Commonwealth for failing to do so: appellate procedures in cases where a witness with a disability has not been provided an accommodation have been far from clear. Exercising our superintendence power pursuant to G. L. c. 211, § 3, we now set forth the appellate procedure to be followed in future criminal cases where a witness (or the party proffering the witness's testimony) requests accommodation for a disability in order to testify at trial, and a judge denies the requested accommodation, thereby preventing her from testifying.[19]

b. *Appellate review of requests for accommodation to testify.* "As a general rule, there is no right to appeal from an interlocutory order unless a statute or rule authorizes it." *Maddocks* v. *Ricker*, 403 Mass. 592, 597 (1988), and cases cited. An order denying a witness a requested accommodation that thereby precludes the witness from testifying does not fit easily within any of the existing statutes or rules applicable in criminal cases.

order compelling him to testify at an upcoming criminal trial. The petitioner claimed that the order would violate his privilege against self-incrimination under the Fifth Amendment to the United States Constitution. See *Palaza* v. *Superior Court*, *supra* at 1001. Because no witness can be compelled to give self-incriminating testimony, absent waiver or a grant of immunity, regardless of whether a party requires her testimony, the single justice vacated the order, and her ruling was affirmed by this court. See *id.* at 1002.

[19]McDonough's petition seeking appellate review arises in the context of a criminal case. Some or all of the appellate procedure and trial court guidance we outline today may have application in the civil context as well, a point that has not been briefed and that we do not decide.

See, e.g., G. L. c. 278, § 28E; Mass. R. Crim. P. 15, as appearing in 422 Mass. 1501 (1996). Nevertheless, this court has "wide discretion in devising various procedures for the course of appeals in different classes of cases." *Zullo* v. *Goguen,* 423 Mass. 679, 681 (1996), quoting *Flynn* v. *Warner,* 421 Mass. 1002, 1003 (1995). See G. L. c. 211, § 3 (this court may issue such "directions and rules as may be necessary or desirable for the furtherance of justice" and "the regular execution of the laws"). Cf. *Commonwealth* v. *Silva,* 448 Mass. 701, 704-706 (2007) (clarifying procedure for nonparties to obtain appellate review of impoundment orders in ongoing criminal case); *Zullo* v. *Goguen, supra* at 682 (establishing method for appellate review of orders made pursuant to G. L. c. 209A).

To date we have not allowed either the Commonwealth or a defendant to appeal as a matter of right from an interlocutory order that limits the evidence that may be presented at trial. However, an order that does so by denying accommodation of a witness with a disability is distinguishable from other such orders because it implicates not only the right of the party who proffers her testimony, *Commonwealth* v. *Boswell,* 374 Mass. 263, 267 (1978) (Commonwealth has "right to present legal evidence"); *Commonwealth* v. *Edgerly,* 372 Mass. 337, 343 (1977) (order barring testimony from witnesses in support of alibi defense implicates defendant's constitutional rights), but also the important substantive rights a witness may have under MERA, art. 114, or the ADA. To delay appellate review until final judgment in a criminal trial of an order that may vitiate the rights of the witness would mean that those rights might never be addressed by an appellate court because the defendant may be acquitted or, where the excluded witness is proffered by the Commonwealth and the defendant is nevertheless convicted, review of the order may not be part of any appeal.

Accordingly, in future cases where a judge denies an accommodation requested by a witness (or the party proffering the witness's testimony), thereby precluding the witness from testifying, interlocutory review of the order may be sought as a matter of right by the party seeking to introduce the testimony of the witness. Because substantial rights of the witness are involved, the party may appeal from such an order to a full panel of the Appeals Court. Contrast Mass. R. Crim. P. 15 (a) (2) (party

must apply to single justice of this court for leave to appeal order determining motion to suppress evidence prior to trial). Such an appeal shall be taken as soon as practicable but in any event within thirty days of the date of the interlocutory order, and in accordance with the Massachusetts rules of appellate procedure.[20]

Because the issue is novel in Massachusetts, and because similar circumstances may arise in the future, we now set forth guidelines that may be utilized in a trial court where a witness seeks accommodation for a disability in order to testify in a criminal case and the issue cannot be resolved without judicial intervention.[21] We anticipate that, in most cases, accommodation of a witness with a disability will be provided without controversy and without the need to resort to the procedures we discuss. Our guidance is directed at those few cases in which the proper resolution of a request for accommodation is disputed. As we cannot anticipate every circumstance that may arise, our comments provide broad guidance; the response in each case will be fact specific.

c. *Guidelines where resolution of a witness's request for accommodation for a disability is disputed.* Where a witness with a disability requests an accommodation in order to testify, MERA requires that the court provide such accommodation, so long as it is "reasonable." G. L. c. 93, § 103 (*a*). In many cases the

---

[20]Because the review will be interlocutory and may delay the criminal trial, the party should seek to expedite the appeal, which motion in most cases should be allowed.

[21]We have identified no consistent guidance for Massachusetts trial court judges to follow where a witness seeks accommodation in order to testify. As the Attorney General points out, every court house in Massachusetts has an "ADA coordinator," but the role of such ADA coordinators as it might apply to the circumstances presented in this case is far from clear. Policies and guidelines that apply to requests for accommodations by various persons, including witnesses, have been promulgated by State courts in other jurisdictions. See, e.g., Rule 1.100 of the California Rules of Court ("Requests for accommodations by persons with disabilities"); Colorado Judicial Department, Access to the Courts: A Resource Guide to Providing Reasonable Accommodations for People with Disabilities for Judicial Officers, Probation and Court Staff; Georgia Commission on Access and Fairness in the Courts, A Meaningful Opportunity to Participate: A Handbook for Georgia Court Officials on Courtroom Accessibility for Individuals with Disabilities (2004); State Court Administrative Office of Michigan, Model Policy: Requests for Accommodations by Persons with Disabilities (1998).

witness or the party proffering her testimony may suggest or provide an accommodation that is acceptable to all parties and to the judge. But where, as in this case, that does not occur, a judge will be in no position to make a determination whether any accommodation is "reasonable" unless the judge is informed by the witness (or the party proffering the witness) of the need for a particular accommodation.

(i) For that reason, as a first step, a witness with a disability (or the party proffering the testimony of that witness) should alert a judge and the adverse party that the witness needs accommodation, and identify the reasonable accommodation that the witness seeks. Cf. *Shedlock* v. *Department of Correction*, 442 Mass. 844, 856 (2004) ("incumbent" on prisoner alleging violation of art. 114 and ADA "to request accommodation in the first instance"); *Adoption of Gregory*, 434 Mass. 117, 124 (2001) (same for parent alleging ADA violations in custody proceedings); *Kiman* v. *New Hampshire Dep't of Corrections*, 451 F.3d 274, 290 (1st Cir. 2006), citing *Reed* v. *LePage Bakeries, Inc.*, 244 F.3d 254, 260 (1st Cir. 2001) (under ADA, "a person normally must make a specific request for the modification in question"). Because the witness will usually know before trial that she will be called to testify, notification that she requests an accommodation should be filed before trial. See part 2.c(ii), *infra*.

McDonough argues that a judge should have primary responsibility for identifying the accommodation needs of a witness. We disagree. The judge, in contrast to the party proffering the witness, generally will know little, if anything, about the witness before seeing her, in many cases for the first time when she takes the stand to testify at trial. Imposing the primary obligation on an individual judge to identify the accommodation where a witness (or the party calling the witness) has made no request for accommodation would require every judge in every case to make assumptions about a witness's disability, potentially resorting to stereotypes concerning persons with disabilities, the very practice the Legislature in MERA and Congress in the ADA sought to deter.[22] Cf. *Shedlock* v. *Department of Correc-*

---

[22]There may be circumstances where a judge becomes aware that a witness is disabled and requires accommodation because the disability and need for accommodation are "obvious." In such cases, lack of a specific request from the witness or proffering party should not bar the judge from fulfilling the

*tion*, *supra* (prison officials not required to anticipate prisoner's "unarticulated need" for accommodation).[23]

(ii) On notification that a witness will need accommodation in order to testify, in many cases the matter will be resolved to the satisfaction of all involved without a hearing. If, for some reason, the issue is not resolved, for example where an accommodation for a witness who is disabled is not being provided, or the reasonableness of the accommodation is challenged, or a party contends that a witness should not be permitted to testify because of her need for accommodation, any objection should be presented to the judge, who should resolve the issue at a hearing, preferably before trial.

(iii) At such a hearing a judge should make inquiry on the record of the witness whether she has a disability that requires accommodation and, if so, what accommodation might enable her to testify. If such inquiry cannot be made without accommodation, the judge should order the provision of reasonable accommodation, if available, necessary to make the inquiry. Where appropriate, the judge may appoint an independent expert, e.g., an expert in communicative disorders, to assess the witness's disability and its impact on her ability to testify, as well as the reasonable accommodation, if available, that would permit the

court's obligation under MERA to provide "reasonable accommodation," if available. G. L. c. 93, § 103 (*a*). Cf. *Boston Hous. Auth.* v. *Bridgewaters*, 452 Mass. 833, 845-848 (2009) (housing authority had notice of tenant's disability despite lack of express notice from tenant, and although tenant did not request accommodation expressly, tenant's acts and assertions "amounted to a request for an accommodation"; "[t]o make a reasonable accommodation request, no 'magic' words are required"); *Robertson* v. *Las Animas County Sheriff's Dep't*, 500 F.3d 1185, 1197 (10th Cir. 2007), and cases cited (when need of individual with disability for accommodation is "obvious," individual's "failure to expressly 'request' " accommodation is "not fatal" to ADA claim).

[23]McDonough also claims that the "duty to provide notice" to a witness with a disability of her rights "should rest with the judge." We again disagree. In general, the administrative office of a court, not an individual judge, will assume that responsibility in the first instance. See, e.g., sources cited in note 21, *supra*. The proper method for providing such notice, and the proper response to requests for accommodations, will vary depending on the role of the person making the request (e.g., litigant, witness, juror) and the type of accommodation requested (wheelchair access, sign language interpreter). Cf. 28 C.F.R. § 35.106 (2009) (under ADA, "public entity shall make available to . . . participants . . . and other interested persons information regarding the provisions of this part and its applicability to the services, programs, or activities of the public entity").

witness to testify.[24] In resolving a witness's request for accommodation, a judge should give primary consideration to the accommodation requested. Cf. 28 C.F.R. § 35.160(b)(2) (2009) (under ADA, "[i]n determining what type of auxiliary aid and service is necessary, a public entity shall give primary consideration to the requests of the individual with disabilities").[25] Where competency to testify of a witness with a disability is at issue, a judge should determine whether there are reasonable accommodations that would enable the witness to testify competently.[26,27]

---

[24]Where a judge appoints such an expert, the purpose of the assessment should be explained to the witness, and the witness should be advised that in a criminal trial the results will not be confidential. A witness may refuse to participate in such an assessment, in which case the report of the expert may be based on facts in the record, including the written evidence, if any.

[25]The parties have limited rights to examine or cross-examine the witness at this preliminary stage of inquiry by the judge. Cf. *Commonwealth* v. *Doucette*, 22 Mass. App. Ct. 659, 662 (1986), *S.C.*, 400 Mass. 1005 (1987) (at hearing on witness's competency to testify, trial judge has discretion "to conduct the voir dire alone, without the assistance of any questioning by counsel").

[26]Whether an individual with a disability is competent to testify differs in important respects from whether an individual with a disability is competent to engage in some other activity, such as employment. Cases cited by the amici concerning an individual with limited expressive abilities found to be legally competent to perform other activities are inapposite, except to the extent that they provide support for McDonough's claim that she is *mentally* competent to testify and could do so with reasonable interpretive assistance. See, e.g., *Magaw* v. *Huntley*, 36 App. D.C. 26, 32-33 (1910) (decedent with aphasia likely was competent "to intelligently conduct business transactions"); *Hogg* v. *Hohmann*, 323 Ill. 545, 552 (1926) (considering whether decedent with aphasia was "mentally competent to transact ordinary business"); *Estate of Wrigley*, 104 Ill. App. 3d 1008, 1014, 1017 (1982) (decedent with expressive aphasia had testamentary capacity to execute codicil to will). Cf. *McDonald* v. *Standard Gas Engine Co.*, 8 Cal. App. 2d 464, 474 (1935) (competency of plaintiff with aphasia to pursue negligence action not at issue).

[27]Judges have wide discretion to "determine the method by which a witness's competency is to be tested," *Demoulas* v. *Demoulas*, 428 Mass. 555, 563 (1998), but that discretion is limited where the law imposes an affirmative obligation to take certain steps, for example, to accommodate an individual's disability. Cf. *Commonwealth* v. *Brusgulis*, 398 Mass. 325, 329-330 (1986) (judge "obliged" to "tailor the competency inquiry to the particular circumstances" of witness). Thus, G. L. c. 93, § 103 (*a*), requires that where the competency of a witness who has requested accommodation for a disability has been challenged, the witness must be provided with reasonable accommodation, if available, during the evaluation of her competency, and the evaluation must include consideration whether the witness would be competent to testify were reasonable accommodation, if available, provided.

Because of the possibility of appellate review of a decision concerning a request for accommodation, the judge should make findings adequate to permit such review. See *Commonwealth* v. *Isaiah I.*, 448 Mass. 334, 339 (2007), *S.C.*, 450 Mass. 818 (2008) (findings of fact "should be stated clearly, concisely and unequivocally, and be worded so that they are not susceptible of more than one interpretation").

d. *Reasonable accommodation and cross-examination of a witness.* In a criminal proceeding, the determination whether a requested accommodation is reasonable will involve, among other things, consideration of the defendant's constitutional right to cross-examination. See *Pointer* v. *Texas*, 380 U.S. 400, 405 (1965) ("the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal"). We have rejected claims that permitting an accommodation of a witness's impaired expressive capacity necessarily violates a defendant's right of confrontation, even where defense counsel is constrained in cross-examining the witness. See, e.g., *Commonwealth* v. *Brown*, 451 Mass. 200, 206-208 (2008) (no confrontation clause violation where witness "had difficulty articulating verbal responses to some of defense counsel's questions" and judge permitted witness to answer some questions nonverbally); *Commonwealth* v. *Barbosa*, 399 Mass. 841, 845-848 & n.10 (1987) (same where witness with " 'minimal language skills,' a form of sign language which is not formalized and which uses gestures and pantomime," permitted to testify through interpreter). Numerous other jurisdictions have reached similar results.[28] In this respect *People* v. *Tan Minh Tran*, 47 Cal. App. 4th 759 (1996), is instructive. The witness in that case was a quadriplegic who

---

[28]See, e.g., *Vasquez* v. *Kirkland*, 572 F.3d 1029, 1032, 1038 (9th Cir. 2009), cert. denied, 130 S. Ct. 1086 (2010) (witness who was deaf and communicated by "combination" of informal "signs, gestures, facial expressions, and sounds" testified through two-step interpretation process); *United States* v. *Bell*, 367 F.3d 452, 463-464 (5th Cir. 2004) (witness who was "deaf and mute" but was "able to effectively communicate through a form of sign language, a system of grunts and gestures," that was "understood by family and friends familiar with him," testified through interpretation by sister into Choctaw, which was then translated into English by government interpreter); *Trammell* v. *State*, 53 Ala. App. 246, 247-248 (1974) (witness who had "suffered a stroke which affected her speech" was "interrogated by leading questions" and her "answers were given mostly by negative or affirmative nods of the head"); *Byndom* v.

could not speak, the victim of a shooting. He testified at trial "by tapping a pencil in response to questions, once for yes and twice for no." *Id.* at 765. The court reasoned that there was no confrontation clause violation because:

"[T]he limitations on appellant's cross-examination were not placed there by the court, but arose from [the witness's] physical condition. [The witness] was not a mentally incompetent witness; he was a physically disabled one. His limitations extended equally to his ability to communicate to the prosecution as well as the defense. Although it is difficult to cross-examine a person with [the witness's] physical limitations, the court did not act to restrict counsel from cross-examining this witness."

*Id.* at 770. In instances such as those present in the *Tan Minh Tran* case, but not present here, the perpetrator of a crime may inflict such grievous injury on a victim that the victim's ability to testify will be severely constrained. To exclude testimony from those individuals where the Commonwealth seeks to punish the perpetrator imposes a particular hardship on the victim.[29]

State, 344 Ark. 391, 394-395, 398, 402-403 (2001) (witness testified by responding to "yes" or "no" questions and utilized "augmented speaking device . . . which synthesizes speech for its users" to limited extent to provide some "more detailed responses" during cross-examination); *People* v. *Augustin*, 112 Cal. App. 4th 444, 448, 451-452 (2003) (witness with cerebral palsy testified through prosecutor's use of leading questions); *People* v. *Sykes*, 341 Ill. App. 3d 950, 973-974 (2003) (witness who was "unable to communicate verbally" testified through use of "eye gaze system, which allowed her to spell out words using letters of the alphabet," and interpreter); *People* v. *Spencer*, 119 Ill. App. 3d 971, 973, 979 (1983) (witness testified through "gestures"; pointing to "a blackboard containing letters of the alphabet, numbers, colors, picture symbols for simple concepts such as house"; and "reenactment" using "anatomically correct dolls").

[29]There are numerous cases from other jurisdictions where a witness with impaired expressive capacity has been found competent to testify with communicative assistance. See, e.g., *People* v. *Alexander*, 724 P.2d 1304, 1306-1308 (Colo. 1986) (witness who was "partial deaf mute" testified with sign language interpreter); *Ritchey* v. *People*, 23 Colo. 314, 317-319 (1896) (witness who was deaf and mute testified through "submitting to him written questions to which he replied in writing, and the questions and answers were then read to the jury"); *State* v. *Galloway*, 304 N.C. 485, 493-494 (1981) (witness who was deaf and mute testified through sign language interpreter); *Commonwealth* v. *Tavares*, 382 Pa. Super. Ct. 317, 327 (1989) (witness with cerebral palsy testified "by spelling out words letter by letter" using "speak

3. *Conclusion.* We are cognizant of the many challenges faced in our society by individuals with disabilities, see *Tennessee* v. *Lane*, 541 U.S. 509, 516 (2004), quoting 42 U.S.C. § 12101(a)(7) (individuals with disabilities "have been faced with restrictions and limitations, subjected to a history of purposeful unequal treatment, and relegated to a position of political powerlessness in our society"), and of the important public policies reflected in MERA, art. 114, and the ADA to ensure that they are treated equally with other persons. Because of their vulnerabilities, persons with disabilities may often be crime victims, and their interests need protection no less than other victims. See G. L. c. 258B, § 3 (setting forth "rights" of "victims and witnesses of crime"). It is incumbent on all judges and judicial staff to ensure that every person with a disability be provided with reasonable accommodation, if available, to ensure that she can be a full and equal participant in our system of justice.

For the reasons stated above, exercising our supervisory power pursuant to G. L. c. 211, § 3, we conclude that (1) where a witness with a disability requests accommodation in order to testify, MERA requires that the court provide such accommodation, so long as it is "reasonable," G. L. c. 93, § 103 (*a*); (2) where there is a dispute concerning such a witness's request for accommodation, a judge should conduct a hearing to resolve the dispute, preferably before trial, and the witness should be provided with reasonable accommodation, if available, during the pretrial hearing; and (3) where a judge precludes a witness with a disability from testifying by denying a request for accommodation, the party proffering the witness, but not the witness, may appeal the judge's interlocutory ruling as a matter of right to the Appeals Court.

Because McDonough does not have standing to seek relief from the District Court judge's order, we deny her petition and vacate the single justice's stay of the proceedings. The case is

and spell" device); *Villarreal* v. *State*, 576 S.W.2d 51, 57 (Tex. Crim. App. 1978), cert. denied, 444 U.S. 885 (1979) (witness who was deaf and mute "was able to testify during the trial only in simple terms, and relied heavily on photographic exhibits"). Cf. *Schneiderman* v. *Interstate Transit Lines, Inc.*, 394 Ill. 569, 573, 577-578 (1946) (plaintiff with aphasia who "could not make answer to any but simple questions" competent to testify in civil trial).

remanded to the District Court for further proceedings consistent
with this opinion.

*So ordered.*