NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-947

ADOPTION OF AMARI.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a Juvenile Court judge issued a decree finding the mother unfit, terminating her parental rights, and approving the Department of Children and Families' (department) adoption plan for Amari, the mother appealed. Several months later, the mother filed a motion for new trial, pursuant to Mass. R. Civ. P. 60 (b), 365 Mass. 828 (1974), asserting that she was denied a reasonable accommodation at trial. After a non-evidentiary hearing, the judge denied the mother's motion. The mother again appealed and the appeals were consolidated in this court. We affirm both the decree and the denial of the motion for new trial.

Background. Amari was born in the fall of 2022. The following day, the department filed a petition for care and

_____

[1] A pseudonym.

protection of Amari, based on two reports pursuant to G. L. c. 119, § 51A, documenting that Amari was born substance-exposed and that the mother did not have a home. The department took custody of Amari and retained custody through trial. Trial was heard on October 3, 2024.[2] The judge subsequently issued detailed findings supporting her conclusions that the mother was unfit and likely to remain so and that Amari's best interests were served by terminating the mother's parental rights.[3]

Discussion. "To terminate parental rights to a child and to dispense with parental consent to adoption, a judge must find by clear and convincing evidence, based on subsidiary findings provided by at least a fair preponderance of the evidence, that the parent is unfit to care for the child and that termination is in the child's best interests." Adoption of Jacques, 82 Mass. App. Ct. 601, 606 (2012). "The judge must also find that the current parental unfitness is not a temporary condition" (quotation and citation omitted). Adoption of Arianne, 104 Mass. App. Ct. 716, 720 (2024). "We give substantial deference to the judge's decision to terminate parental rights and reverse only where the findings of fact are clearly erroneous or where

_____

[2] The trial initially began in July 2024, but that trial resulted in a mistrial.

[3] Amari's putative father was struck from the case for failing to establish paternity and is not a party to this appeal.

there is a clear error of law or abuse of discretion" (quotation and citation omitted).  Id.  "An abuse of discretion exists where the decision amounts to a clear error of judgment [in weighing the relevant factors, such] that [the decision] falls outside the range of reasonable alternatives" (citation omitted).  Id.

1.  Termination of the mother's rights.  The mother argues that the judge abused her discretion by relying on two factual findings that the mother claims were clearly erroneous: (1) the mother failed to maintain "significant and meaningful contact with the child during the previous six months," and (2) the mother failed to demonstrate an effort "to remedy conditions which create a risk of harm due to abuse or neglect of the child."  See G. L. c. 210, § 3 (c) (iii), (viii).  We disagree.

a.  Contact with Amari.  The mother attended many visits with Amari in the six months leading up to the trial, but she also cancelled several visits and sometimes nodded off at visits or asked to end a visit early.  In August 2024, the mother's visits were reduced from one hour weekly to biweekly due to her lack of compliance with the department's plans or progress toward reunification. When she responded angrily to this reduction in visitation and threatened the department, the mother's visits were suspended for about two weeks, until the department could meet with her and her counsel to discuss the

3

incident.  In contrast to the mother's assertion that the judge drew unsupported inferences from a gap in the department's reporting, the judge made twenty-six findings about the mother's visitation history, and each finding included a citation either to the department's reports or the mother's testimony.  Based on the mother's gaps in visits and lack of meaningful engagement with Amari at some visits, there was ample support for the judge's finding that the mother failed to maintain meaningful contact with Amari.  Because the factual finding was not clearly erroneous, the judge's reliance on it as a factor in determining the mother's fitness was not an abuse of discretion.  See Adoption of Ilona, 459 Mass. 53, 62 (2011).

b.  Efforts to remedy harmful conditions.  The department's action plans for the mother sought to address her mental health, substance use, housing instability, and visitation planning and behavior.  The mother engaged at times with programs that would address each of these issues, including participating in a residential treatment program that would allow her to have Amari with her.  She stayed in a residential treatment program from March 2023 through May 2023, a second one from July 2023 through November 2023, and a third from December 2023 until around April 2024.  However, the mother was terminated from each of these programs when she relapsed or did not follow the program rules. The mother also stopped complying with the department's drug

4

testing after January 2024 and reported to the department in April 2024 that she would refuse any more programs. At the time of trial, the mother did not have housing and was not engaged in substance use or mental health treatment. Based on the mother's failure to complete the residential programs or maintain sobriety, the judge concluded that she had not "follow[ed] through with the changes necessary" to address her mental health, substance use, and housing instability issues or "adequately engage" in treatment. Again, where the judge's factual determinations were supported by the record, it was not an abuse of discretion for the judge to consider that the mother failed to demonstrate an effort to address conditions that created a risk of harm to Amari. See Adoption of Ilona, 459 Mass. at 62.

2. Mother's request for a reasonable accommodation at trial. The mother also claims that the judge improperly denied her request for a reasonable accommodation at trial. She argues that the judge compounded this error and abused her discretion by denying the mother's motion for a new trial. See Adoption of Raissa, 93 Mass. App. Ct. 447, 455 (2018). We disagree.

Massachusetts courts owe a duty to provide reasonable accommodations to a witness with disabilities. See McDonough, petitioner, 457 Mass. 512, 522-526 (2010). See also Adjartey v. Central Div. of the Hous. Court Dep't, 481 Mass. 830, 848 (2019)

5

(duty to provide reasonable accommodations extends to civil trials). "[A]s a first step, a witness with a disability . . . should alert a judge and the adverse party that the witness needs accommodation, and identify the reasonable accommodation that the witness seeks." McDonough, supra at 523. After the issue is raised, "in many cases the matter will be resolved to the satisfaction of all involved without a hearing." Id. at 524. On appeal, we look at whether the judge "preclude[d] a witness with a disability from testifying by denying a request for accommodation." Id. at 528.

Here, just before the trial commenced, the mother moved for a disability accommodation based on her anxiety and depression. Specifically, the mother requested that she be permitted to testify without interruption prior to any objections from opposing counsel. When the mother alerted the judge to her disability and requested accommodation, the department responded that it "would be willing to do accommodations." Amari's attorney stated she was "fine" with letting the mother answer fully before objecting. Consequently, the judge was not required to hold a hearing about the reasonableness of the accommodation. See McDonough, 457 Mass. at 524.

Although the judge denied the motion, subject to further consideration as the trial progressed, the mother's request for accommodation functionally was granted. During the department's

6

direct examination of the mother, there were three objections raised, two by Amari's counsel and one by the mother's counsel. Each objection was made after the mother completed her answer. In other words, counsel complied with the mother's request. We are not persuaded by the mother's contention that she was denied reasonable accommodation when, during her own attorney's cross-examination, the judge asked the mother to wait "[j]ust a minute" and "hold on" before answering two questions with objections. Simply put, the accommodation the mother requested said nothing of the judge asking for a momentary pause to make a ruling. The judge did not preclude the mother from testifying, and the mother's decision to walk out of the courtroom and refuse to continue her testimony cannot be blamed on a failure by the trial judge to provide reasonable accommodation. See McDonough, 457 Mass. at 528.

Finally, we disagree with the mother's contention that it was unfair for the judge to draw a negative inference from her absence because she was rendered unable to meaningfully participate in the trial. The judge's findings about the mother's temperament at trial are separable from the mother's accommodation request. After the mother left the witness stand, she did not return to the courtroom to resume her testimony. After the mother did return, during the department social worker's subsequent testimony, she shouted, "she's lying" and

7

had to be escorted out of the courtroom.  In these circumstances, the mother's need for an accommodation to facilitate her testimony did not preclude the judge from considering her behavior during the trial.  See Custody of Two Minors, 396 Mass. 610, 616-617 (1986).  See also Adoption of Yvonne, 99 Mass. App. Ct. 574, 580 (2021) (judge may properly consider parent's behavior at trial).

In sum, we discern no error in the judge's application of the guidelines for providing a reasonable witness disability accommodation to the mother or drawing a negative inference from the mother's behavior at trial, nor an abuse of discretion in denying the mother's motion for a new trial.

Decree affirmed.

Order denying motion for new trial affirmed.

By the Court (Walsh, Grant & Brennan, JJ.[4]),

Clerk

Entered: May 5, 2026.

---

[4] The panelists are listed in order of seniority.