DEBRA HAGEN *vs.* COMMONWEALTH & others.[1]

Suffolk. April 1, 2002. - July 31, 2002.

Present: MARSHALL, C.J., GREANEY, IRELAND, COWIN, SOSMAN, & CORDY, JJ.

*Constitutional Law,* Standing. *Practice, Civil,* Standing. *Practice, Criminal,* Execution of sentence.

The victim of a crime had no standing under G. L. c. 258B, § 3 (*f*), to file a motion to revoke a stay of execution of sentence that had been granted to the person convicted of raping and indecently assaulting and battering the victim, because § 3 (*f*) does not confer upon victims the right to secure the prompt disposition of postconviction proceedings; however, because the statute was intended to change the "traditional view" of victims from virtually silent observers to active participants in the criminal justice system, this court concluded that victims should be permitted an opportunity to address the court directly when their fundamental right to a prompt disposition is jeopardized. [377-381] COWIN, J., concurring.

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on July 24, 2001.

The case was heard by *Spina,* J.

*Wendy J. Murphy* for the plaintiff.

*Harry D. Quick, III,* Assistant District Attorney (*Brian J. Cann,* Assistant District Attorney, with him) for the Commonwealth.

*Nancy A. Dolberg* for the intervener.

*Evan M. Slavitt & Gregory D. Cote,* for National Crime Victim Law Institute & others, amici curiae, submitted a brief.

CORDY, J. Debra Hagen appeals from a judgment entered by a single justice of this court denying her petition under G. L. c. 211, § 3. As the victim of a crime, Hagen sought relief from the denial of her motion to revoke the stay of execution of the defendant's sentence in the underlying criminal action which had been entered pending his appeal. Her motion was brought

---

[1]Worcester Superior Court Department and James J. Kelly, intervener.

in the Superior Court pursuant to § 3 (f) of the "victim's bill of rights," G. L. c. 258B, which provides victims of crime with the "basic and fundamental right[] . . . to a prompt disposition of the case in which they are involved."[2] In a memorandum and judgment, the single justice concluded that, "[n]otwithstanding the fact that a stay of execution of the sentence in the underlying criminal action has been in effect since 1988," the victim had no standing to bring a motion to revoke the stay because she is "not a party to the proceedings and she has no judicially-cognizable interest in the prosecution of another." We affirm the judgment of the single justice. We conclude, however, that a victim asserting the right of prompt disposition under the statute should be provided with an opportunity to address the court when that right is jeopardized.[3]

1. *Background.* We review the tortured procedural history in this case. A grand jury returned two indictments charging rape and one indictment charging indecent assault and battery in April, 1987, against James J. Kelly, who was convicted by a jury on all charges in October, 1987. Kelly then collapsed in the courtroom and was taken to a hospital by ambulance. After several delays, Kelly was sentenced in April, 1988, to two concurrent ten-year sentences on the rape convictions and one concurrent five-year sentence on the indecent assault and battery conviction, to be served at the Massachusetts Correctional Institution at Concord. Execution was stayed pending his release from the hospital.

On April 26, 1988, Kelly filed a motion to stay execution of his sentence pending appeal and a motion for a new trial. The primary ground asserted for a new trial was ineffective assistance of trial counsel. The motion to stay execution of the sentence was allowed in July, 1988, "without prejudice to

---

[2]General Laws c. 258B, § 3 (f), as appearing in St. 1995, c. 24, § 5, states: "To provide victims a meaningful role in the criminal justice system, victims and witnesses of crime . . . shall be afforded the following basic and fundamental rights . . . (f) for victims and witnesses . . . a prompt disposition of the case in which they are involved as a victim or a witness."

[3]We acknowledge an amicus brief submitted on behalf of the National Crime Victim Law Institute at Lewis and Clark Law School; Jane Doe, Inc./ Massachusetts Coalition Against Sexual Assault and Domestic Violence; and the National Alliance of Sexual Assault Coalitions.

further consideration of the motion for a stay of execution at the time the motion for a new trial was decided."

In early 1992, Hagen inquired by letter to the court regarding the reason for the delay in the execution of Kelly's sentence. The inquiry was forwarded to the prosecutor who, Hagen maintains, sought her agreement that Kelly be granted a new trial in exchange for his guilty plea and a disposition placing him on probation. Hagen refused, and in May, 1992, Kelly's motion for a new trial was denied.

On May 22, 1992, Kelly filed a notice of appeal from both the judgments of conviction and the denial of the motion for a new trial. The appeal was not processed in the ordinary course: the court reporter did not deliver the one-volume transcript of the hearing on the motion for a new trial to the court clerk until March, 1993; portions of the trial transcript were not delivered to the clerk until September, 1994; and, although the appeal was entered in the Appeals Court in October, 1994, the Appeals Court (after staying the appellate proceedings while the parties attempted to remedy the record deficiencies) vacated the entry of the appeal in April, 1996, as "premature."[4]

During 1996 and early 1997, the parties reportedly sought to reconstruct missing portions of the trial transcript. The record, however, is devoid of any action taken from 1997 through 2000. The Commonwealth represents that this period of inaction on the appeal was discovered during a "routine review" of the prosecution's appellate files in December, 2000. As a result, the Commonwealth filed a motion to revoke the stay of execution of sentence pending appeal in February, 2001.

In May, 2001, Hagen, represented by counsel, filed a motion requesting the court to revoke Kelly's stay of execution of sentence or to issue a warrant directing that Kelly be taken into custody forthwith to begin serving his sentence. Hagen's motion argued that the delay in execution of Kelley's sentence violated her right to a "prompt disposition" under G. L. c. 258B, § 3 (f). The defendant objected to Hagen's motion and her

---

[4]Kelly's appeal from the denial of his first motion for a new trial has since been perfected and is currently pending in the Appeals Court. Kelly filed a second motion for a new trial in June, 2001, which was denied on September 7, 2001.

counsel's notice of appearance. A Superior Court judge sustained the defendant's objection "insofar as [Hagen's counsel] seeks to 'appear' for victim and thus confer upon victim 'party' status," but did permit Hagen's counsel to address the court "in connection with victim's thoughts" on the Commonwealth's motion to revoke the stay. The Commonwealth's motion was denied in June, 2001.

Hagen filed a petition in the county court pursuant to G. L. c. 211, § 3, "seek[ing] review of the judge's order . . . [denying her] limited standing to assert the merits of her position and to seek a remedy under [G. L. c.] 258B, § 3 (*f*)[,] and . . . [review of the judge's order denying] the Commonwealth's revocation motion." The petition requested that the single justice (1) issue an order "directing that the lower court take appropriate steps to cause [Kelly] to begin serving his sentence forthwith"; (2) issue an order "reversing the lower court's order granting a stay of execution in June 2001, which order was issued without explanation or justification"; and (3) "[a]ny other relief deemed appropriate and just." The single justice denied the petition on the ground that Hagen "is not a party to the proceedings and she has no judicially-cognizable interest in the prosecution of another." That denial is now before us.

2. *Discussion.* The discretionary power of review under G. L. c. 211, § 3, is recognized as "extraordinary," and will be available only in "the most exceptional circumstances." *Costarelli* v. *Commonwealth*, 374 Mass. 677, 679 (1978). Parties seeking relief under G. L. c. 211, § 3, must demonstrate both violation of their substantive rights and absence of another "adequate or effective avenue of relief." *Victory Distribs., Inc.* v. *Ayer Div. of the Dist. Court Dep't*, 435 Mass. 136, 137 (2001). We will not disturb a decision of a single justice on appeal unless there is an abuse of discretion or other clear error of law. *Caggiano* v. *Commonwealth*, 406 Mass. 1004, 1005 (1990). There was no error.

"In 1983, Massachusetts approved a victims' bill of rights, providing crime victims the right to be informed of and participate in criminal prosecutions. See G. L. c. 258B, inserted by St. 1983, c. 694, § 2. The statute generally requires the staff of the district attorneys to ensure that victims and witnesses are

afforded such rights. See G. L. c. 258B, § 3." *Commonwealth v. Bing Sial Liang*, 434 Mass. 131, 134-135 (2001). The purpose of § 3, as described by the Legislature in its prefatory language, is:

> "To provide victims a meaningful role in the criminal justice system, victims and witnesses of crime, or in the event the victim is deceased, the family members of the victim, shall be afforded the following basic and fundamental rights, to the greatest extent possible and subject to appropriation and to available resources, with priority for services to be provided to victims of crimes against the person and crimes where physical injury to a person results . . . ."

G. L. c. 258B, § 3.

Hagen contends that the single justice erred in ruling that she had no standing to seek revocation of Kelly's stay of execution. She claims that G. L. c. 258B, § 3 (*f*), confers on her a right to file a motion to revoke the stay of execution because the section requires "a prompt disposition of the case in which [victims] are involved." The deprivation of this right, Hagen maintains, violates her Federal and State constitutional rights to due process.

In enacting G. L. c. 258B, § 3 (*f*), the Legislature clearly intended to confer on victims the right to ensure the prompt trial and, if convicted, the prompt sentencing of the perpetrators of the crimes against them. This intention is apparent from the definition of the term "[d]isposition" set forth in G. L. c. 258B, § 1, as "the sentencing or determination of penalty or punishment to be imposed upon a person convicted of a crime or found delinquent or against whom a finding of sufficient facts for conviction or finding of delinquency is made." We can fairly assume that the Legislature was aware that the appellate process may be time consuming, but that sentences are not normally stayed pending appeal. Implicit in the legislative scheme is the expectation that a sentence lawfully imposed will not be avoided because of some inordinate delay in the processing of the appeal. We conclude that the Legislature sought to assure for victims a prompt disposition within the context of the

trial process and do not read § 3 (f) to confer on victims the right to secure the prompt disposition of postsentencing proceedings.[5] In the present case, the defendant was tried and sentenced within one year of indictment, and Hagen alleges no delay in that part of the process. The statutory requirement of a "prompt disposition" thus has been satisfied.[6]

Even if Hagen had been deprived of a prompt disposition, this deprivation would not confer standing on her to bring the motion at issue here. Statutory language provides our principal insight into legislative purpose. *Commissioner of Corps. & Taxation* v. *Chilton Club*, 318 Mass. 285, 288 (1945). "It is the function of the court to construe a statute as written and an event or contingency for which no provision is made does not justify judicial legislation." *First Nat'l Bank* v. *Judge Baker Guidance Ctr.*, 13 Mass. App. Ct. 144, 151 (1982), quoting *Prudential Ins. Co.* v. *Boston*, 369 Mass. 542, 547 (1976). We do not read into legislation rights not provided. Further, "a statutory expression of one thing is an implied exclusion of other things omitted from the statute." *Commonwealth* v. *Russ R.*, 433 Mass. 515, 521 (2001), quoting *Police Comm'r of Boston* v. *Cecil*, 431 Mass. 410, 413 (2000). While the statute provides victims with various types of assistance in understanding and dealing with the criminal justice system, it does not confer on a victim status as a party or the right to file motions such as that at issue here.[7] If the Legislature had intended otherwise, it could

---

[5]Although a victim's rights and duties "continue to be enforceable until the final disposition of the charges, including . . . all post-conviction . . . proceedings . . . [and] all appellate proceedings," G. L. c. 258B, § 11, this provision refers to the time frame for the over-all panoply of rights conferred by the statute. It does not alter the definition of "[d]isposition," which is expressly provided in G. L. c. 258B, § 1, nor does it alter the meaning of "prompt disposition."

[6]We also note that, in substance, Hagen's motion does not seek to expedite the appellate process. Rather, she asserts that the judge below decided to stay execution of Kelly's sentence pending the outcome of that appellate process. She points to nothing in the statute that gives her any "right" with respect to that decision.

[7]Victims confronted with a situation such as that presented here are not without recourse. To obtain the rights provided under G. L. c. 258B, "by the court or by any criminal justice agency responsible for implementing such rights," "[a] victim or family member may request assistance from the [victim

have done so. See *Commissioner of Revenue* v. *Cargill, Inc.*, 429 Mass. 79, 82 (1999).

The single justice was also correct in determining that the victim of a crime does not have a judicially cognizable interest in the prosecution of another. "The rights which [the victim] seeks to enforce criminally are not private but in fact are lodged in the Commonwealth . . . ." *Taylor* v. *Newton Div. of the Dist. Court Dep't*, 416 Mass. 1006, 1006 (1993), and cases cited. A prosecution is conducted in the interests of the Commonwealth, not on behalf of the victim. See *Commonwealth* v. *Gonsalves*, 432 Mass. 613, 618-619 (2000); *Commonwealth* v. *Beal*, 429 Mass. 530, 533 (1999). "[I]n American jurisprudence . . . a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Tarabolski* v. *Williams*, 419 Mass. 1001, 1002 (1994), quoting *Linda R.S.* v. *Richard D.*, 410 U.S. 614, 619 (1973). The district attorney is the elected advocate of the people "for a broad spectrum of societal interests — from ensuring that criminals are punished for wrongdoing, to allocating limited resources to maximize public protection." *Commonwealth* v. *Gordon*, 410 Mass. 498, 500 (1991). This well-entrenched principle of our jurisprudence is further reason to interpret the statute as we have. Had the Legislature intended to alter such a fundamental principle, it would have said so with clarity. *Commissioner of Revenue* v. *Cargill, Inc., supra.*

Although nothing in G. L. c. 258B either alters our long-standing jurisprudence that the victim of a crime does not have a judicially cognizable interest in the prosecution of another or confers on a victim the status of a party to the criminal proceeding, the statute was intended to change the "traditional view" of victims from virtually silent observers to active participants

and witness assistance] board." G. L. c. 258B, § 12. When a victim seeks such assistance from the board, "to address the victim's concerns, the board may seek assistance from the district attorney governing the jurisdiction in which the crime against the victim is alleged to have been committed or from the attorney general." *Id.* A victim may also directly seek assistance from the district attorney or Attorney General. *Id.*

in the criminal justice process.[8] In addition to conferring on victims the right to a prompt trial and sentencing, the Legislature also directed that judges (among others) must act to "assure that victims of crime are afforded the rights established in this chapter." G. L. c. 258B, § 12. Because the remedy for a violation of § 3 (*f*) is "the sentencing or determination of penalty or punishment to be imposed," G. L. c. 258B, § 1, a remedy that only a court is empowered to provide, victims should be permitted an opportunity to address the court directly when their fundamental right to a prompt disposition is jeopardized. If a victim is prohibited from bringing to a judge's attention that there has been a delay in the proceedings, the right afforded by the statute is essentially meaningless.[9] Here, even though § 3 (*f*) does not apply to postsentencing proceedings, the Superior Court judge gave proper recognition to Hagen's rights by allowing her counsel to address the court while not permitting her to intervene as a party.

Hagen further contends that the right to a prompt disposition is a liberty interest that is protected by the Fourteenth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. She concedes that there must be a constitutional or statutory source for such a liberty interest and contends that G. L. c. 258B, § 3 (*f*), has created that liberty interest. We have concluded that this statute has not created such a liberty interest. Accordingly, her argument fails.

We have considered Hagen's remaining arguments including those concerning G. L. c. 233, § 20J; denial of equal protection; and art. 11 of the Massachusetts Declaration of Rights, and we have determined that these arguments lack merit.

Our holding that Hagen lacks standing to file a motion to

---

[8]See, e.g., G. L. c. 258B, § 3 (*o*) (right to seek restitution as element of disposition in criminal case), and § 3 (*p*) (right to be heard at sentencing or disposition).

[9]Contrary to the view espoused in the concurrence, *post* at 382-383, the court is neither "rewriting" G. L. c. 258B nor engaging in "judicial legislation" in concluding that a victim given the statutory right to a "prompt disposition" ought to be permitted to address the court when that right is jeopardized. The court is interpreting the statute to give effect to its multiple parts, consistent with the clear legislative intent that the rights of victims be considered in the course of criminal proceedings by the officials responsible for them, including judges.

revoke a postconviction stay of sentence does not imply our approbation of the lengthy delay in the final disposition of this case. The record provides no plausible excuse for a delay of four years in holding the hearing on the defendant's motion for a new trial or a delay of almost nine years between the filing of the notice of appeal and the Commonwealth's motion to revoke the stay of the defendant's sentence pending appeal. If the appeal is not perfected, it is incumbent on the Commonwealth to take some action to resolve the case. The rights of the victim and the public to finality demand more than the Commonwealth has produced here. See *Commonwealth* v. *Amirault*, 424 Mass. 618, 636-637 (1997).

*Judgment affirmed.*

COWIN, J. (concurring). The court, while conceding that the victim is not a party, nevertheless creates a right of victims to participate in the proceeding as a nonparty. That is judicial legislation designed to fill a void in the statutory procedure. In G. L. c. 258B, § 3 (*f*), the Legislature has declared a statement of principle, but has provided no means of implementing that principle other than by permitting victims to seek assistance from the victim and witness assistance board, the district attorney or the Attorney General, none of whom is required to assist the victim in this specific regard. See G. L. c. 258B, § 12. Where the Legislature intended the victim to be heard it has stated so specifically. Section 3 (*p*) provides for victims "to be heard through an oral and written victim impact statement at sentencing or the disposition of the case against the defendant about the effects of the crime on the victim and as to a recommended sentence . . . and to be heard at any other time deemed appropriate by the court."[1] While granting a right to victims to address the court concerning disposition, the Legislature did not grant any right to victims to address the court in § 3 (*f*) concerning prompt disposition. The court transforms the Legislature's

---

[1]This reference to "any other time deemed appropriate by the court" clearly only refers to addressing the court concerning sentencing and, in any event, the right to be heard "at any other time" is discretionary with the court.

general statement of principle in § 3 (*f*) into the creation of a right that is not found in the statute directly or by implication. Contrary to the court's statement that the Legislature "intended to change the 'traditional view' of victims . . . to active participants in the criminal justice process," *ante* at 380-381, the Legislature has not done so. It is only the court's rewriting of the statute that creates this remedy. If the Legislature wishes to create such rights, of course it may do so. If it does not do so, it is not the function of the court to rewrite the statute.