STATE OF LOUISIANA IN
THE INTEREST OF L.R.

*      NO. 2021-C-0141

*      COURT OF APPEAL

*      FOURTH CIRCUIT

*      STATE OF LOUISIANA

*

*

* * * * * * *

*JCL*     **LOBRANO, J., DISSENTS AND ASSIGNS REASONS.**

I respectfully dissent and assign the following reasons:

I would find that a victim has ancillary standing to file motions and writs and place objections relevant to any violation or infringement of a victim's rights during all critical stages in the juvenile or criminal justice process where the rights are guaranteed.[1]

The majority opinion fails to cite relevant jurisprudence and prematurely decides that the victim's rights were not violated or infringed and that a recusal is unwarranted. Although a proper review of the totality of circumstances in this case may eventually reveal that the victim's right-to-be-heard was not violated during the early release process or that the victim's right-to-fairness was not denied when the court refused to address the recusal motion to ensure public confidence in the fairness of the juvenile action, it is imperative that the majority's lack of nonparty standing holding be reversed as it has significant repercussions to victims and the justice process. The majority's holding greatly diminishes the constitutional rights

---

[1] La. Const. art. I, § 25 provides, in pertinent part, that a victim shall "be treated with fairness, dignity, and respect," have the right to be present and heard during all "critical stages" of a proceeding, "be informed upon the release from custody or the escape of the accused," and have "the right to seek restitution." Section 25 further reads: "The legislature shall enact laws to implement this Section. The evidentiary and procedural laws of this state shall be interpreted in a manner consistent with this Section. . . . Remedies to enforce the rights enumerated in this Section shall be provided by law."

1

of all victims in both the juvenile and criminal justice systems in Louisiana, as well as the constitutional rights of other nonparties, such as the right-to-access enjoyed by the press and public.

The following guiding principles are applicable when interpreting victim rights statutes: (1) victims must be meaningful participants in the justice process; (2) victim's rights extend to all critical stages of a case, including proceedings without a hearing or ex parte; (3) victims are re-victimized in the justice process when they are excluded or minimized from the process; and (4) legislatures intended victims to have independent and meaningful procedural mechanisms to assert and enforce their rights and did not intend to afford victims' rights but provide no meaningful enforceable remedy to enforce those rights.[2]

In the case *sub judice* involving crimes of violence,[3] I find that the relator, D.S. ("Victim"), has ancillary, independent standing to invoke his right-to-be-heard and right-to-fairness during the early release process, including proceedings ex parte or held without a hearing. Thus, I would vacate all court rulings in response to the motions filed by Victim, lift the stay of the hearing, and remand this matter to the Orleans Parish Juvenile Court ("Juvenile Court") for further proceedings consistent with this opinion.

---

[2] "These measures guaranteed victims' rights in the criminal process, such as the right to be notified of court proceedings, to attend those proceedings, and to speak at appropriate points in the process, such as plea bargaining and sentencing" and "promising victims a right to fair treatment 'throughout the criminal justice process." "Congress also intended to ensure that crime victims were not revictimized in the criminal justice process—that is, that they would not suffer what scholars have called "secondary harm" in the process. The concern is that victims suffer when they are excluded from the criminal justice process. Congress sought to end that suffering by making victims meaningful participants in criminal cases." Paul G. Cassell, Nathanael J. Mitchell, and Bradley J. Edwards, *Crime Victims' Rights During Criminal Investigations? Applying the Crime Victims' Rights Act Before Criminal Charges Are Filed*, 104 J. Crim. L. & Criminology 59, 64, 67 (2014).

[3] La. Ch.C. art. 811.3(1) provides: "'Victim' means a person against whom an offense that is a felony-grade delinquent act has been committed." La. Ch.C. art. 879(B)(1) provides: "All proceedings in a juvenile delinquency case involving a crime of violence as defined in R.S. 14:2 (B) or a delinquent act which is a second or subsequent felony-grade adjudication shall be open to the public." *See also* La. Ch.C. art. 322 *et seq.* (where a victim who is physically impaired and fits into the classification of "protected person" "a videotape shall be available for introduction into evidence in any juvenile proceeding under this Code in which it is relevant").

Appellate courts enjoy broad supervisory jurisdiction "over cases which arise within its circuit," pursuant to La. Const. art. V, § 10, and a "judge may issue . . . all other needful writs, orders, and process in aid of the jurisdiction of his court" under La. Const. art. V, § 2. I agree with the majority that our supervisory jurisdiction extends to a review of a lower court's ruling on the standing of a nonparty to the proceedings.

I particularly find that our supervisory jurisdiction extends to a review of a court's ruling on the standing of natural or juridical persons to appear and file objections, motions or writs in a pending juvenile or criminal proceeding as a nonparty, especially when the person asserts an interest, which is derived from a constitutional right, that is guaranteed in the pending proceeding, and that was allegedly infringed or violated, and suffers an injury-in-fact that is relevant to the challenged ruling that caused the infringement or violation.

I disagree with the majority's holding that a victim in a "juvenile/criminal proceeding" does not have a standing interest to file motions because "a victim is not recognized in law as a party in a juvenile/criminal proceeding." Although the majority recognizes victims' constitutional rights in juvenile court, the practical effect of their holding is to deny an enforceable procedural remedy when these rights are allegedly violated or infringed.

I do not find that the legislature intended to enact laws to protect a victim and to grant rights in juvenile and criminal courts and then procedurally prohibit that victim from meaningfully enforcing those rights. Unlike the findings of Juvenile Court and the majority, I interpret the laws and jurisprudence as affording victims procedural mechanisms to enforce their constitutional rights, which have been allegedly infringed or violated in a proceeding where those rights are guaranteed. I further hold that Louisiana laws and jurisprudence afford victims the right to object and intervene within or to file motions or writs ancillary to the

3

juvenile or criminal proceeding in which the infringement or violation has allegedly occurred.

The facts and procedural history are as follows:

On March 26, 2019, Victim was shot by L.R. This shooting is the object of the underlying juvenile civil action. As a result of the shooting, Victim now has a physical impairment and developmental disability as he is paralyzed and in a wheelchair with no bodily functions from the waist down. Victim's grandmother ("Grandmother") is his caretaker and a family victim representative in juvenile court.

On April 3, 2019, the State of Louisiana, through the Orleans Parish District Attorney's Office ("State"), filed a Petition of Delinquency in Juvenile Court naming L.R. as a party and requesting that the court adjudicate L.R. delinquent ("Petition"). L.R., through his attorney of record, an attorney with the Louisiana Center for Children's Rights, appeared before Juvenile Court throughout 2019 and 2020.

On July 2, 2019, Juvenile Court adjudicated L.R. delinquent due to the commission of the following crimes of violence: Attempted 2nd Degree Murder, Armed Robbery, Illegal Use of a Weapon, and Illegal Possession of a Handgun.

On August 27, 2019 at the time of disposition, Juvenile Court placed L.R. in the secure care of the Office of Juvenile Justice ("OJJ") until his 21st birthday in 2026 and set forth the following early release goals: "[u]pon reaching the age of 17 [in 2022], should the juvenile have obtained his high school diploma, obtained two trades, and have minimal code of conduct violations, the Court will entertain releasing the juvenile at that time."

On June 22, 2020, Juvenile Court was informed at an OJJ Review Hearing that L.R. "attempted to escape by jumping the fence at Bridge City Center for Youth on April 2nd and April 19th. He was then transported to Swanson Center for

4

Youth and escaped from said facility. He was then transported to Acadiana Center for Youth on April 30, 2020. The Court notes it was not notified of the attempted escapes and/or escape. The Court is to be provided with an updated report from OJJ as to what exactly occurred with the attempted escapes and escape. Defense has been in contact with the juvenile quite frequently."

On November 12, 2020, L.R.'s attorney filed a Motion to Modify Disposition, including a motion for early release ("Motion for Early Release"). Presently, L.R.'s former attorney is the Orleans Parish District Attorney's Office Chief of the Juvenile Division. District Attorney Jason Williams, who was newly elected on November 3, 2020, appointed L.R.'s former attorney as the Chief Juvenile Assistant District Attorney ("ADA") on February 18, 2021.

The Motion for Early Release asked Juvenile Court to modify L.R.'s disposition prior to his 17th birthday and before attaining the release goals. The motion requested the court to release L.R. from secure care at the Acadiana Center for Youth and allow him to be in "non-secure placement" so he can "attend school daily" and "re-integrate into the community." The motion notes that L.R. "exhibited a passion for learning and has always excelled academically . . . and has goals of attending college" but OJJ "is unable to accommodate children attending school daily and that L.R. does not attend school "2-3 days/per week."

On February 22, 2021, Juvenile Court held a joint hearing on an OJJ Review and the Motion for Early Release (collectively "the Early Release Hearing"). Victim and Grandmother were present at the Early Release Hearing along with their attorney, Ralph Brandt, and other family members. Victim claims that the Early Release Hearing was of concern to him because L.R. has achieved none of the early release goals, L.R. attempted two escapes and successfully completed one escape, and the new Chief Juvenile ADA was L.R.'s attorney throughout the juvenile action and filed the Motion for Early Release.

5

Victim filed the following motions with Juvenile Court: (1) Motion to Recuse the District Attorney's Office (no ruling); (2) Motion for Production of Transcript for Court of Appeal (denied); (3) Motion to Preserve Electronic Recording of Hearing (denied); (4) Motion for Stay of Proceeding (denied); and (5) Notice of Intent to Seek Supervisory Writs (denied) (collectively "the Motions"). Juvenile Court either denied or refused to rule on the Motions.

Victim's Application for Writ of Supervisory Review asserts the following as one of the issues presented for review: "Did the juvenile court violate Relator's state constitutional rights as a crime victim, under La. Const. Art. 1, Sec. 25, by not allowing Relator's grandmother, as family representative, to complete her statement at the February 22, 2021 hearing?" According to the procedural history provided in the writ application, "grandmother's effort, as family representative, to speak in open court, regarding L.R.'s possible early release, after only a few sentences" was truncated by Juvenile Court and objections were made on behalf of Victim.

Victim invokes his constitutional right-to-be-heard and right-to-fairness during the critical early release process in L.R.'s juvenile civil action. Parties seem to agree that the early release process is a critical stage in a juvenile proceeding. Our Court has been asked to invoke our supervisory jurisdiction as to whether Juvenile Court properly proceeded at the hearing with respect to the testimony of Grandmother, ruled that Victim has no standing to file motions in the juvenile case, and refused to address the recusal motion.

Juvenile Court, as did the majority, held that a victim of a delinquent act does not have a right to "intervene" and file motions in the juvenile action of the delinquent child that caused the victim's injuries. Juvenile Court, in its per curiam, stated that the law "does not specifically grant the right to file motions in the case." The majority stated, "a victim is not recognized in law as a party in a

juvenile/criminal proceeding" and "likewise lacks standing to appear before the juvenile court to file motions, to adjudicate issues, etc." The majority also holds that "a victim lacks standing to seek appellate review of the juvenile/criminal case." Juvenile Court also did not recognize Victim's supervisory relief and refused to address Victim's Notice of Intent to Seek Supervisory Writs.

These rulings place undue weight on the proposition that a victim cannot be recognized as a "party" to a juvenile or criminal proceeding. The analysis in these rulings is incomplete and confusing and fails to recognize and address other procedural mechanisms available to victims as recognized by our jurisprudence. The confusion stems from first, the use of certain procedural terms, such as "intervention" and "party", in the strictest sense; and second, the distinction between filing a motion to invoke a nonparty's own constitutional rights, as Victim did here, with that of invoking rights on behalf of a party to the proceeding, which is disallowed. The Louisiana legislature, in La. Ch.C. art. 811.1 E, disallows a right of appeal of a victim on behalf of any person. Additionally, victims' rights articles shall not be construed "as creating a cause of action *on behalf of any person* against any public employee, office, or department responsible for the provision of services set forth in this Article." La. Ch.C. art. 811.1(E)(emphasis added).[4]

---

[4] *See also* La. R.S. 46:1844(U) (victim is not afforded a cause of action "for an award of costs or attorney fees, for the appointment of counsel for a victim, or for any cause of action for compensation or damages against the state of Louisiana, a political subdivision, a public agency, or a court, or any officer, employee, or agent thereof"); La. Const. art. I, § 25 ("[n]othing in this Section shall be the basis for an award of costs or attorney fees, for the appointment of counsel for a victim, or for any cause of action for compensation or damages against the state of Louisiana, a political subdivision, a public agency, or a court, or any officer, employee, or agent thereof"). Courts are reluctant to interpret victim rights statutes as granting victims certain actionable rights. *See e.g. United States v. Slovacek, 699 F.3d 423 (5th Cir. 2012)*(victim did not have a right to direct appeal of court's ruling on restitution owed by the accused); *Hagen v. Commonwealth,* 437 Mass. 374, 772 N.E.2d 32 (2002) (Massachusetts crime victims' bill of rights, which afforded crime victims the right to be informed of and participate in criminal prosecutions, did not confer standing upon victim to seek a stay of execution of convicted criminal's sentence; victim of crime does not have a legally cognizable interest in the prosecution or nonprosecution of another; victim's rights thus not implicated). However, this is not at issue in the case *sub judice*. Victim is not asserting a direct appeal or cause of action on behalf of L.R. or the State or invoking a legally cognizable interest in the individualized dispositional judgments of the court. Victim is merely invoking his independent legally cognizable interest relative to a victim's right-to-be-heard and right-to-fairness.

Victim cannot and is not challenging Juvenile Court's individualized dispositional judgments pertaining to L.R., including any modifications. Victim's motions are merely in response to procedural rulings that allegedly infringed on or violated his constitutional rights. Victim seeks to enforce his own rights, which are connected to L.R.'s pending action and guaranteed in L.R.'s early release process.

Victim properly claims to have standing in L.R.'s juvenile action to enforce his right-to-be-heard and right-to-fairness as a victim of L.R.'s delinquent act guaranteed under La. Const. art. I, § 25.[5] Victim does not specifically ask to be named as a "party to the proceedings" and to enjoy those rights of the parties to the proceedings, the State and L.R. Victim merely asks to file motions within L.R.'s juvenile proceeding in order to object and "intervene" as a nonparty or, in other words, to file motions as a nonparty ancillary to L.R.'s juvenile proceeding.

In *United States v. Davis*, 902 F. Supp. 98 (E.D. La. 1995), *aff'd*, 132 F.3d 1454 (5th Cir. 1997), the court found:

> *Even though they are not parties in the case, the Times–Picayune and its reporter have standing to try to lift the Court's Order. Standing requires that one suffer injury-in-fact that is causally connected to the challenged action.*
>
> Courts have universally held that restrictions placed on willing speakers implicate the First Amendment rights of their audience. Thus, as part of that audience, the newspaper does not assert third-party standing here: it bases its claims on direct injury to its own First Amendment rights, rather than on any constitutional harm suffered by others. *See In re Application of Dow Jones & Co.,* 842 F.2d 603, 606–07 (2d Cir.1988); *Radio & Television News Ass'n,* 781 F.2d at 1445–46; *CBS Inc. v. Young,* 522 F.2d 234, 237-38 (6th Cir.1985); *see also Central South Carolina Chapter, Society of Professional Journalists v. Martin,* 431 F.Supp. 1182, 1186-88 (D.S.C.1977) (finding press has no standing to challenge order), *rev'd,* 556 F.2d 706 (4th Cir.1977). This Court's Order was crafted on the model of *Dow Jones.*

---

[5] *See also* La. Ch.C. arts. 811.1, 893, and 909-911.

*United States v. Davis*, 902 F. Supp. at 101-102 (emphasis added). *See In re Application of the New York Times Co.,* 878 F.2d 67, 67–68 (2d Cir. 1989) (noting that "[n]o rule of federal criminal procedure allows intervention by third parties in a criminal proceeding," but finding that the Court of Appeals has jurisdiction over the newspapers' appeal of gag order).[6]

I find that even though Victim is not a party to L.R.'s case, he has ancillary standing to file the Motions. Following the persuasive analysis in *Davis*, I would hold that victim standing requires that a natural or juridical person suffered an injury-in-fact that is causally connected to the challenged action. I find that Victim does not assert strict third-party standing, but instead bases his claims on a direct injury to his own constitutional rights, rather than on any constitutional harm suffered by others.

Citing *United States v. Slovacek,* 699 F.3d 423, 427 (5th Cir. 2012),[7] as persuasive authority, the majority asserts "there is no procedure for non-party

---

[6] The majority cited La. C.Cr.P. art. 381 for the proposition that victims are not parties to criminal prosecutions and, thus, cannot intervene because their "rights are not affected thereby." Again, the Children's Code disallows a victim the right to a direct appeal on behalf of the delinquent child. In other words, Victim cannot appeal the future ruling on the Motion for Early Release deciding whether L.R. should be released from secure care. However, evidentiary and procedural laws of this state provide Victim with the right to seek redress as a "nonparty" through supervisory, mandamus, and other extraordinary equitable relief. A victim's constitutional rights are not affected by rulings relating to the accused but they are affected by rulings relating to a victim's rights. Also, Article 381 was enacted prior to constitutional provisions granting victim rights and statutes affording victims remedies. I find Article 381 inapplicable for determination of the issue before us.

[7] In *Slovacek*, Fisher filed a motion seeking restitution from Slovacek based on his conviction for conspiracy to commit bribery. At sentencing, the district court orally denied the motion, finding that Fisher was not a victim of Slovacek's bribery conspiracy. Fisher filed a petition for writ of mandamus, brought pursuant to the Crime Victims' Rights Act ("CVRA"), challenging the district court's restitution ruling. The United States Fifth Circuit Court of Appeals denied the petition for writ of mandamus. *See In re Fisher,* 640 F.3d 645 (5th Cir. 2011). After the sentencing transcript was released, Fisher moved for reconsideration of the denial of his petition for writ of mandamus, which the Fifth Circuit denied. *See In re Fisher,* 649 F.3d 401 (5th Cir. 2011). After the district court entered a final written judgment against Slovacek, which did not order him to pay restitution to Fisher, Fisher directly appealed the judgment. Citing circuit precedent, the Fifth Circuit noted that nonparty victims do not have the right of direct appeal under the CVRA and dismissed Fisher's appeal for lack of jurisdiction. *Slovacek*, 699 F.3d at 427 (5th Cir. 2012) (citing *In re Amy Unknown,* 697 F.3d 306, 312 (5th Cir. 2012) (en banc)).

9

intervention into a criminal case."[8] Reliance on federal jurisprudence for the resolution of this issue is unnecessary, as Louisiana courts have long recognized procedures for nonparty intervention in criminal cases. The courts recognize the standing of nonparties (victims[9] and media representatives[10]) in criminal proceedings "to object"[11] and "intervene into,"[12] or to file motions "ancillary to"[13] the criminal proceeding under certain circumstances. I agree with the majority that this is a *res nova* issue as to juvenile proceedings but find that the analysis of whether a victim has standing is the same whether decided in a juvenile or criminal proceeding.

   *State v. Adkins*, 97-219 (La. App. 3 Cir. 10/29/97), 702 So.2d 1115, *writ denied*, 97-3001 (La. 2/13/98), 706 So.2d 998, illustrates the right of a non-party victim to file motions in a criminal proceeding. In *Adkins*, the victim, a father/father-in-law of murder victims, filed in a criminal proceeding a pretrial motion to recuse the state Attorney General and to invoke his victim rights under the Victims' Rights Act. The trial court ruled that the victim did not have standing to file a motion to recuse. On appeal, the Third Circuit noted that "while [the

---

[8] The majority cites *Slovacek* for the proposition that the federal jurisprudence "rejected the notion that victims have standing to intervene, or file motions in criminal cases because victims are not parties to the case." The majority's interpretation of the holding in *Slovacek* is misplaced, incorrect, and inapplicable in the *case sub judice*. *Slovacek* stands for the proposition that a victim does not have a right of a direct appeal of a ruling against the accused. Victim is not asserting such a direct appeal on behalf of L.R. or of a ruling regarding L.R. *See supra* note 4 and accompanying text for discussion on disallowed appeals and causes of action of victims.

[9] *See e.g. Adkins*, 97-219, 702 So.2d 1115.

[10] *See e.g. State v. Fletcher*, 537 So.2d 805 (La. App. 2nd Cir. 1989); *State v. Widenhouse*, 556 So.2d 187 (La. App. 2nd Cir. 1990). *See also State v. Walden Book Co.,* 386 So.2d 342, 343, n. 1(La. 1980)(in an obscenity prosecution against Penthouse magazine, the Louisiana Supreme Court allowed the magazine publisher to intervene noting "the absence of statutory provisions permitting intervention in a criminal case"). Federal courts have recognized the right of nonparty corporations and business entities "seeking leave to intervene to protect privileged or confidential information or documents obtained, or property seized, during a criminal investigation." *United States v. Scully*, 2013 WL 3338593, at *2 (W.D. Tex. July 2, 2013)(citation omitted).

[11] *See e.g. Fletcher*, 537 So.2d 805.
[12] *See e.g. Widenhouse*, 556 So.2d 187.

[13] *See e.g. Adkins*, 97-219, 702 So.2d at 1119.

victim] would have standing to file a motion to recuse the district attorney, we find no authority for him to so move against the Attorney General" since "there [is] no provision in the Louisiana Code of Criminal Procedure which provide[s] for the recusal of the Attorney General." *Adkins*, 97-219, p. 7, 702 So.2d at 1118, 1119. In finding that the victim would have standing to move to recuse the district attorney, the court cited Official Revision Comment (b) to La. C.Cr.P. art. 681, which states: "This article does not specify who may file the motion to recuse the district attorney. The motion is usually filed by the defendant; however, the article is broad enough to permit the injured party to file the motion in an appropriate case." *Adkins*, 97-219, p. 7, 702 So.2d at 1119. The trial judge also agreed to hear the motion to invoke the victim's constitutional rights as a mandamus proceeding (a civil proceeding). After hearing the mandamus proceeding, the judge denied the motion, finding no evidence that the Attorney General infringed or violated the victim's constitutional and statutory rights. The Third Circuit affirmed the trial court's ruling on the mandamus proceeding. *Adkins*, 97-219, p. 8, 702 So.2d at 1119.

*Adkins* is very persuasive in its analysis and supports Victim's right to file motions in L.R.'s juvenile case. Not only did the *Adkins* court recognize the victim's standing to file a motion to recuse, but allowed the victim to file a motion invoking his rights without the necessity of having to intervene in the criminal action, describing the two motions as "motions filed ancillary to above captioned criminal proceedings." *Adkins*, 97-219, p. 1, 702 So.2d at 1116. Thus, *Adkins* recognizes the right of a nonparty to file "ancillary" motions in a criminal case.

In addition to recognizing the standing of victims to file motions in criminal proceedings, courts have long recognized the standing of media representatives seeking to challenge or appeal a court order sealing documents or closing hearings

11

to the public and the standing of corporations or other business entities seeking to protect privileged or confidential information or documents.

In *State v. Fletcher*, 537 So.2d 805 (La. App. 2nd Cir. 1989), a nonparty local newspaper appeared at a hearing and "was allowed to object" to the closure of a hearing. The trial court denied the newspaper's objection. The newspaper then filed a writ application seeking review of the trial court's order closing to the public a preliminary hearing for testimony of two alleged minor victims of their male teacher who was charged with molesting them and sealing the transcripts of the minors' testimony. The Second Circuit granted the newspaper's writ application, reversed the trial court's order closing the hearing and sealing the transcripts of the minors' testimony, and remanded the matter to the trial court for further proceedings.

In *State v. Widenhouse*, 556 So.2d 187 (La. App. 2nd Cir. 1990), in a second degree murder prosecution, the trial court, at the request of the state and without objection from the defendants, ordered in chambers that the entire record in the case be sealed. The publisher of a newspaper subsequently filed a motion to intervene and to vacate the order sealing the record. The trial court granted the intervention and after conducting a hearing, amended its prior order of total sealing and ordered that only the portion of the record containing the answers to motions for discovery and inspection, with attachments, be sealed. The newspaper applied for supervisory writs to review the trial court's amended order. The Second Circuit granted the writ, made it peremptory, and reversed the lower court's ruling sealing a portion of the record.

In *Davis*, *supra*, after the trial court issued an order prohibiting the participants in the case from making certain specific extrajudicial statements, the newspaper filed a motion to intervene and a motion to vacate the court's gag order. The court granted the newspaper's motion to intervene and denied the motion to

vacate the gag order. Likewise, in *United States v. Cleveland*, 1997 WL 412466 (E.D. La. July 22, 1997), *aff'd*, 128 F.3d 267 (5th Cir. 1997), after a verdict was rendered in a highly publicized trial, the district court ordered that jurors could not be interviewed regarding jury deliberations absent special court order. Two newspaper publishers and reporters moved to intervene and to modify the order restricting juror interviews concerning juror deliberations. The court granted the motion to intervene, citing *United States v. Davis*, and denied the motion to modify. The Fifth Circuit affirmed the district court's ruling. *United States v. Davis*, 132 F.3d 1454 (5th Cir. 1997).

In *United States v. Scully*, 2013 WL 3338593, at *2 (W.D. Tex. July 2, 2013), the court recognized the right of nonparty corporations and business entities "seeking leave to intervene to protect privileged or confidential information or documents obtained, or property seized, during a criminal investigation."

The rights at issue in the case *sub judice*, namely, the right-to-be-heard and right-to-fairness, is at least as compelling as the media's right-of-access and business's right to protect privileged or confidential information. In such cases, the courts have recognized the right of a nonparty to "intervene" in criminal proceedings to file for supervisory, mandamus, or other extraordinary or equitable relief.[14] Without these procedural rights, the constitutional rights of the public, media representatives, and victims would be irreparably harmed as delays involved in obtaining ordinary relief or relief in a new case would render them meaningless.

---

[14] In other civil actions, nonparties with an interest in a proceeding can assert that interest in the pending action. *See e.g. Copeland v. Copeland,* 06-1023 (La. 6/2/06), 930 So.2d 940 (Court granted media representative's writ application, vacated and set aside the judgment of the trial court sealing the entire record, and remanded the case to the trial court to conduct a new hearing on the parties' motion to seal); *Testa Distrib. Co. v. Tarver*, 584 So.2d 300, 311 n. 8 (La. App. 1st Cir. 1991)(court recognized that non-parties "may have an interest in this suit because it is their tax records which are at issue [and] may have a right to intervene and obtain a protective order").

Although state and federal courts agree that a nonparty has standing in a criminal proceeding, the procedural mechanisms used by a nonparty and allowed by the courts greatly vary. In *Davis*, the court made the following observations about the right of a nonparty to file motions in a criminal case and the right to challenge court orders by seeking mandamus against the court or the judge:

> The *Picayune* asserts that intervention under Rule 24 is the appropriate mechanism to challenge the Court's Order. However, it is noteworthy that both cases invoked in support of intervention involved civil, rather than criminal, proceedings. The Federal Rules of Criminal Procedure contain no mirror intervention provision. *See In re Application of the New York Times Co.,* 878 F.2d 67, 67–68 (2d Cir.1989) (noting that "no rule of criminal procedure allows intervention by third parties in a criminal proceeding," but finding that Court of Appeals has jurisdiction over the newspapers' appeal of gag order); *see also In re Application of National Broadcasting Co.,* 635 F.2d 945, 949 n. 2 (2d Cir.1980) (holding that although "dispute could have been treated by the District Court as a new civil case" rather than as a proceeding within the criminal case, "[n]o jurisdictional significance should attach to the fact" that it was not).
>
> In criminal cases, most newspapers have challenged gag orders by seeking mandamus against the court or the judge. *E.g., News-Journal Corp. v. Foxman,* 939 F.2d 1499 (11th Cir.1991); *Radio & Television News Ass'n of Southern Calif. v. United States District Court,* 781 F.2d 1443 (9th Cir.1985). The Ninth and Fourth Circuits have expressly approved the mandamus procedure. *Radio & Television News Ass'n,* 781 F.2d at 1445; *Central South Carolina Chapter, Society of Professional Journalists v. Martin,* 556 F.2d 706, 707 (4th Cir.1977). Without referring specifically to any procedure, the Second Circuit has held that a newspaper has standing to appeal entry of a gag order. *New York Times Co.,* 878 F.2d at 67–68. The Court can find no reported cases either upholding or denying intervention under these circumstances.
>
> Although the issue remains unsettled, its determination here has little significance. The *Picayune* clearly has standing to question the Court's order. *Whether the newspaper voices its objections by filing a separate miscellaneous action, a motion for intervention, a writ of mandamus, or an interlocutory appeal merely elevates form over substance.* The Court permits this intervention and the motion to intervene is GRANTED.

*Davis*, 902 F. Supp. at 101 (emphasis added).

As noted above, Louisiana courts have recognized the right of nonparties to object, intervene, and file motions ancillary to a criminal proceeding under certain circumstances.[15] Particularly, as noted, one Louisiana court allowed a *victim* in a criminal proceeding to file motions "ancillary to the above captioned criminal proceedings."[16] Some Louisiana cases do not specifically address standing in criminal cases, but allow nonparty intervention and objections.[17] Some federal circuit courts do not address "intervention" in federal criminal cases but instead construe "appeals" filed by media representatives seeking review of district court orders in criminal cases as original actions for mandamus or other extraordinary relief. *See, e.g.*, *Harrelson v. United States*, 967 F. Supp. 909, 912, n. 13 (W.D. Tex. 1997), citing *In re Globe Newspaper Company v. Hurley*, 920 F.2d 88, 90-91 (1st Cir. 1990) (declining to determine whether there is a right to "intervene" possessed by a newspaper seeking to examine the names and addresses of jurors who had participated in a just-completed criminal trial but reviewing that same issue in the context of mandamus relief).

Turning to this case, Victim's motions in effect seek to compel the District Attorney to recuse his office and to compel Juvenile Court to exercise its authority as mandated by the constitution and statutes to allow Victim to be heard and treated with fairness. Victim's motions can be construed as an action for supervisory, mandamus or other extraordinary and equitable relief.

---

[15] *See also Chicago Trib. Co. v. Mauffray*, 2008-522, p. 9 (La. App. 3 Cir. 11/5/08), 996 So.2d 1273, 1280 ("[T]he News Media may not be acting as 'intervenors' in the strictest sense. However, the News Media's request to 'intervene' is, at its heart, a request to be heard regarding their exclusion from the courtroom. . . . Furthermore, to deny the media standing to challenge closure of courtroom proceedings or demand access to records of proceedings required to be public would rob the relevant statutes as well as the First Amendment of meaning with respect to the public's deep interest in trials.")

[16] *See e.g. Adkins*, 97-219, p. 7, 702 So.2d at 1119.

[17] *See e.g. Fletcher*, *supra*; *Widenhouse*, *supra*.

Nonetheless, victims in Louisiana clearly have a cause of action to enforce a victim's constitutionally enumerated rights through mandamus relief, and appellate courts have broad authority to grant appropriate supervisory or mandamus relief.[18] La. R.S. 46:1844(U) recognizes that a crime victim may file "a writ of mandamus as provided in the Code of Civil Procedure to compel the performance of a ministerial duty required by law." Moreover, as previously noted, one court found that La. C.Cr.P. art. 681 is broad enough to permit the injured party or crime victim to request the recusal and file motions to effectuate a recusal. *See e.g. Adkins*, 97-219, p. 7, 702 So.2d at 1119. Surely, a victim of a delinquent act is also afforded a cause of action for mandamus relief in a juvenile proceeding. Although the Code of Civil Procedure does not usually apply in delinquency actions, La. C.Cr.P. art. 3, along with other constitutional and statutory provisions, allows a court to proceed in a manner consistent with the spirit these laws. When ruling on a victim's procedural rights, courts should proceed in a manner consistent with the spirit of the provisions of the Children's Code, Criminal Code, and other applicable statutory and constitutional provisions.[19]

Therefore, a victim whose rights have been allegedly infringed upon in a juvenile proceeding should be permitted to seek redress from the juvenile court for mandamus or other extraordinary relief[20] and from the appellate court for

---

[18] *See* La. Const. art. V, §10; La. Const. art. I, §§19 and 22; La. Ch.C. arts. 104 and 338; La. C.Cr.P. art. 3; La. C.C.P. arts. 2164 and 3781, *et seq.*

[19] *See* La. C.Cr.P art. 3.

[20] *See e.g. State v. Riley*, 20-412, p. 1 (La. App. 5 Cir. 2/23/21), 2021 WL 718710, *1 (writ application seeking mandamus relief ordering the court to address outstanding motion to recuse the entire bench and to appoint an *ad hoc* judge to preside over relator's case granted, in part); *Town of Rayville v. Mann*, 136 La. 237, 240, 66 So. 957, 958 (1914) (writ of mandamus issued directed to the court to which an appeal had been taken from a conviction in the mayor's court, ordering the court to hear and pass on the defendant's plea attacking the constitutionality of the ordinance under which the defendant had been convicted). *Cf. MAI Equip. Corp. v. Brooke, Mayo & Derrick*, 263 So.2d 419, 420 (La. App. 2nd Cir. 1972) (recognizing that the remedy for the refusal by a judge to file written reasons for his judgment after proper request to do so is not reversal of the judgment, but to invoke the supervisory jurisdiction of the court of appeal with an application for writ of mandamus); *Waguespack v. Richard*, 220 La. 859, 863, 57 So.2d 748, 750 (1952) (writ of mandamus issued to compel a district judge to render and sign a final judgment in an election contest).

supervisory relief.[21] Otherwise, a crime victim deprived of his or her rights would have a right without an enforceable remedy. I cannot find a law or procedure that would afford a victim relief by ordinary means without causing great injustice due to the delays involved in obtaining ordinary relief. I find that the legislature intended victims to be meaningful participants during all critical stages in the juvenile and criminal justice process and extended a series of rights to victims – "rights that victims have independent standing to assert."[22]

I find that several of the Juvenile Court's rulings and the majority's findings may recognize the importance of Victim's rights and the related legal issues but they in effect rule them meaningless. Juvenile Court finds that "no victims' rights have been violated" and the majority affirmed finding "the victim has not been denied these rights by the juvenile court." However, presently, there is nothing in the record that memorializes Grandmother's efforts to address the court at the Early Release Hearing.

I also note that the majority prematurely decides the recusal issue.[23] Although I agree with both the majority's assessment of the jurisprudence

---

[21] La. Const. art. V, § 10 (A court of appeal "has supervisory jurisdiction over cases which arise within its circuit.").

[22] "Congress also intended to ensure that crime victims were not revictimized in the criminal justice process—that is, that they would not suffer what scholars have called "secondary harm" in the process. The concern is that victims suffer when they are excluded from the criminal justice process. Congress sought to end that suffering by making victims meaningful participants in criminal cases." Paul G. Cassell, Nathanael J. Mitchell, and Bradley J. Edwards, *Crime Victims' Rights During Criminal Investigations? Applying the Crime Victims' Rights Act Before Criminal Charges Are Filed*, 104 J. Crim. L. & Criminology 59, 67 (2014).

[23] After holding that a victim does not have standing to intervene and file any pleadings in juvenile or criminal proceedings, the majority nonetheless reviews Victim's recusal pleading and finds "that the Orleans Parish District Attorney's Office took appropriate steps to ensure that there is no conflict of interest in the prosecution of this case and is therefore, not required to recuse itself." The majority erred in ruling on the recusal as Juvenile Court refused to hear the Motion to Recuse filed by Victim on the basis that, as a nonparty, Victim lacked standing to file motions in the case. *See Riley*, 20-412, p. 1, 2021 WL 718710 at *1 (writ application seeking mandamus relief ordering the Chief Judge of the Twenty-Fourth Judicial District Court to address outstanding motion to recuse the entire bench and to appoint an *ad hoc* judge to preside over relator's case granted, in part).

regarding the recusal of a district attorney's office where an assistant district attorney has previously represented a defendant and the District Attorney's conflict policy that ensures public confidence in the fairness of the juvenile action, we do not have a complete record to review the totality of the circumstances and a contradictory recusal hearing is mandatory.

Additionally, the majority erroneously finds that not only is a victim's right to be heard limited to a victim impact statement, but that the State or the accused, not the juvenile court, has the discretion to present the statement to the court. Juvenile actions are civil proceedings and focus on rehabilitation rather than retribution. Juvenile courts, not the District Attorneys, are afforded great discretion in determining not only the best interest of a delinquent child and individualized dispositional judgments but also the degree of victim participation in a juvenile delinquency proceeding. However, victims' rights statutes and constitutional provisions require courts, prosecutors, and other juvenile justice stakeholders to perform the challenging task together in the disposition process of balancing the rehabilitative needs of the delinquent child with other competing interests, such as accountability to victims, restoration of communities, and directives to impose "the least restrictive disposition authorized."[24]

Various juvenile rehabilitation services[25] require victim participation, if victims are amenable to such participation. I agree with Juvenile Court in its per

---

[24] In Kristin N. Henning, *What's Wrong with Victims' Rights in Juvenile Court?: Retributive v. Rehabilitative Systems of Justice*, 97 Cal. L. Rev. 1107, 1122, 1166-67 (2009), one commentator cautions: "As long as rehabilitation remains an important and viable objective in the juvenile justice system, legislators must carefully consider how victims' rights will advance or undermine this objective. Unfortunately, the legislative record in many states suggests that rehabilitation was not carefully considered by state policymakers in the drafting of victims' rights legislation for juvenile courts."

[25] Some juvenile justice services can provide healing for victims, and accountability and redemption for delinquent children. Two commentators noted that "[u]nlike the adversarial process, restorative justice encourages offenders to take responsibility for their actions and facilitates an in-person process that shows them the real, human impact of their actions." The offender "must recount what he did and why it was wrong to the person whom he hurt, in front of that person's family and supporters, and his own family and supporters. Then, he must listen

curiam that "discussions with the District Attorney's office regarding the change of leadership and how this will affect the victim's rights in this case" is the "proper recourse for action." I also agree with Juvenile Court that the "District Attorney's office is the agency with an interest in protecting victims . . . and could have been given an adequate time to formulate a response in this case," especially considering that the District Attorney was recently elected. Thus, resolution of these victim-related issues can assist the court in requiring the stakeholders to move forward with appropriate victim participation and continued juvenile rehabilitation "without the adversarial approach of filing motions." All juvenile justice stakeholders will benefit from a clarification of the victim-related issues presented in the case *sub judice*.

I recognize, as does the District Attorney in his reply brief, the important role the District Attorney's Office plays in advocating for victim rights, assuring victims' protection, and promoting efficient and problem-solving prosecutorial participation. In criminal court, often prosecutors are left with "two paths of action to victims of crime – prosecution or no prosecution."[26] However, with a strong rehabilitative focus on victims, delinquent children, families, and communities, prosecutors and other juvenile justice stakeholders are afforded the opportunity to "become problem-solvers and enjoy more robust and fulfilling interactions with victims."[27] They can address what a victim may desire from the juvenile justice system: "information, participation, emotional restoration and apology, material

---

as each person who was hurt describes how he was affected by the crime." The victim participation if amenable "is also more likely to change behavior, as it has been shown to demonstrably increase offender empathy and remorse, which are key variables in the prediction of re-offending." "This process of empathy building, ownership, and active restitution is in many ways a prerequisite for behavioral change, which is reflected in numerous studies showing . . . decrease[d] recidivism." Offender's requirements include "restitution, community service, written and oral apologies, and conditions for future contact between parties." Seema Gajwani & Max G. Lesser, *Progressive Prosecution and a Path to Realizing the Movement's Promise*, 64 N.Y.L. Sch. L. Rev. 70, 86-87 (2019-2020).

[26] Gajwani, *supra* note 25, at 91.
[27] *Id.*

reparation, fairness, and respect," as well as the desires of the delinquent child and communities.[28] In fact, I find that La. Ch.C. art. 811.1 read together with other constitutional provisions and statutory articles relating to victim rights in juvenile delinquency actions, requires a District Attorney's Office to consult and negotiate with victims in the spirit of a civil action, not a criminal prosecution.[29] *See* Jack Harrison, *Louisiana Children's Code Handbook* p. 392 (West 2019) ("the victim may also retain private counsel for consultation and negotiation with the district attorney").

I also recognize, as stated in the State's response, that "[a]dvocating for the voice of victims is an essential role of the District Attorney" and "[t]he Orleans Parish District Attorney's Office has a conflicts policy to protect the legitimacy of the proceedings." However, without a proper writ application before us and appropriate lower court hearings and rulings, we are unable to review these important victim-related issues and provide guidance and clarity to allow all stakeholders in the juvenile justice system to respectfully proceed together in a non-adversarial manner to protect Victim's right-to-be-heard and right-to-fairness while providing mandated rehabilitation services to L.R.

Therefore, I would vacate all court rulings in response to the motions filed by Victim and remand this matter to Juvenile Court for further proceedings consistent with this opinion.

---

[28] *Id.*

[29] I respectfully disagree with the assertion in the District Attorney's Office's response brief that a District Attorney's Article 61 authority apply to the issues presented in this juvenile civil proceeding. *See* La. C.Cr. P. art 61 ("Subject to the supervision of the attorney general, as provided in Article 62, the district attorney has entire charge and control of every criminal prosecution instituted or pending in his district, and determines whom, when, and how he shall prosecute"). Article 61 applies when a District Attorney obtains an indictment or files a bill or affidavit and is inapplicable when a civil petition of delinquency is filed on behalf of the State of Louisiana. The Children's Code adequately sets forth the duties and responsibilities of the District Attorney's Office in the dispositional process. A District Attorney's authority in this process is derived from not only these enumerated duties and responsibilities but also from provisions relating to the legal representation in a civil proceeding. In this process, the district attorney is more a kin to an attorney representing the State of Louisiana in civil actions.